Jerome M. ARMANT,
Petitioner/Appellant,

v.

Joe MARQUEZ, Respondent/Appellee.

No. 84–5672.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1984.

Decided Sept. 24, 1985.

---

Boochever, Circuit Judge, dissented in part and filed opinion.

Joseph F. Walsh, Los Angeles, Cal., for petitioner/appellant.

Donald F. Roeschke, Los Angeles, Cal., for respondent/appellee.

Before NELSON, BOOCHEVER and REINHARDT, Circuit Judges.

NELSON, Circuit Judge:

Jerome M. Armant, Jr., appeals from the district court's denial of his petition for writ of habeas corpus. In his petition, Armant alleges that his sixth amendment right to self-representation was violated by the California Superior Court. After an unequivocal, timely request to proceed pro se, Armant sought a continuance in order to prepare his defense. He maintains that the court's denial of this continuance was an abuse of discretion because it effectively prevented him from execising his constitutional right of self-representation. We agree, and reverse and remand with instructions.

## FACTUAL AND PROCEDURAL BACKGROUND

Armant was charged on February 11, 1981, with arson. The Los Angeles County District Attorney claimed that on January 4, 1981, Armant set fire to an automobile belonging to a woman alleged to be his estranged girl friend. On February 11, 1981, a Los Angeles County Public Defender was appointed to represent him. Armant was arraigned and entered a not guilty plea.

On February 18, 1981, in a brief hearing before the Hon. Edward A. Hinz, the following colloquy took place:

MR. CLARK [Armant's attorney]:

First, your Honor, Mr. Armant indicated to me that he wanted to be appointed cocounsel in this case.

I informed Mr Armant that the Public Defender's position is that we are not cocounsel for clients; that Mr. Armant wanted to represent himself.

He has a constitutional right to do that. But that the Public Defender would not be appointed in a cocounsel status in this case.

THE COURT: Well, the court so orders.

Following this exchange, Judge Hinz set a trial date of March 30, 1981, and denied Armant's motions to be released on his own recognizance and to reduce bail.

In his next court appearance, March 30, 1981, Armant received permission to address the court. He complained of difficulties with his attorney. He told Judge Hinz that he had asked his attorney to subpoena two witnesses, but that his attorney had failed to subpoena one of them. He said that he had asked for a copy of the transcript of his preliminary hearing, but that his attorney failed to provide it. After asking for a review of his motions to be released on his own recognizance, and to be appointed co-counsel, the following exchange ensued:

MR. CLARK: Mr. Armant's last request is he desires to go pro per at this time.

THE COURT: All right.

Would you hand Mr. Armant the appropriate form? We'll take this case up later.

Is that what you want to do, Mr. Armant?

You want to be your own lawyer?

THE DEFENDANT: Yes. I feel, Your Honor, if this man doesn't help me, you know—

After Armant had filled out the form and had given it to the clerk, Judge Hinz told Armant that he had a right to an attorney if he wished, and questioned him about his desire to give up that right. Armant unambiguously stated that he wanted to represent himself. Judge Hinz then asked him, "Are you prepared to go to trial in this matter today." Armant first said,

"Yes. If I could," then immediately said, "no, I don't think so." Judge Hinz continued the questioning:

> THE COURT: The question I want to know is, are you ready to go to trial today?
>
> THE DEFENDANT: Not for myself.
>
> THE COURT: Well, how—
>
> THE DEFENDANT: I'm going to proceed—I'm not ready to go to trial today.
>
> THE COURT: How much time do you need to get ready?
>
> THE DEFENDANT: Three weeks.
>
> THE COURT: Well, the request of the defendant for a continuance to the day of trial [sic] to represent himself in pro per is denied.
>
> It's not a timely-made request.
>
> I'm not going to continue this matter for three weeks.

The court, after asking Armant's attorney if he was ready, then set the matter for trial.

At trial the next day before the Hon. John A. Shidler, Armant again received permission to address the court. He asked for a continuance of 14 to 21 days to "hire an attorney of [his] own choosing." He complained again of conflicts with his attorney. Judge Shidler denied the motions and added, "We have to go on with this trial. If you do not wish to remain in the courtroom, you can probably sit in the jail, in the holding tank, if you want to." Armant responded that he would rather sit in the holding tank because he did not want to be in court with his appointed attorney.

After Armant left the courtroom, the trial commenced. The State called three witnesses. Armant declined his attorney's offer to testify in his own defense, and no other defense witnesses were called. At 2:35 p.m, the jury retired to deliberate. The same afternoon they returned a verdict of guilty of arson, a violation of Cal.Penal Code § 451(d).

Armant's motion for a new trial was denied on June 8, 1981, by Judge Shidler. Armant's conviction was affirmed by the California Court of Appeal, Second District.

His petition for hearing before the California Supreme Court was denied. His petition for writ of habeas corpus was denied without a hearing in the district court. Armant filed this timely appeal.

## DISCUSSION

### I. RIGHT TO PETITION FOR HABEAS RELIEF

■ Armant has now served his sentence, but his petition is not moot because the collateral consequences of his felony conviction persist. *Javor v. United States*, 724 F.2d 831, 835 (9th Cir.1984) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 108 n. 3, 98 S.Ct. 330, 332 n. 3, 54 L.Ed.2d 331 (1977)). At the time his petition was filed, he was on parole for this offense. He was thus "in custody" as required by 28 U.S.C. § 2254(b). *See Cervantes v. Walker*, 589 F.2d 424, 425 n. 1 (9th Cir.1978).

### II. THE RIGHT OF SELF-REPRESENTATION

■ The sixth amendment guarantees the right of a defendant to represent himself. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A request for self-representation must be unequivocal, *Meeks v. Craven*, 482 F.2d 465, 466–68 (9th Cir.1973), and timely, and must not be a tactic to secure delay. *Fritz v. Spalding*, 682 F.2d 782, 784 (9th Cir.1982). If these criteria are met, then a defendant's motion to represent himself should be granted.

■ Here, Armant made an unequivocal request to represent himself on March 30 by filling out a form and unambiguously telling the court that he was aware of what he was doing. This request was made before the jury was empaneled. Accordingly, under the standard set forth in *Fritz*, 682 F.2d at 784, it was timely as a matter of law unless it was a tactic to secure delay. *See also Maxwell v. Sumner*, 673 F.2d 1031, 1036 (9th Cir.), *cert. denied*, 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982).

In *Fritz*, the state appellate court, relying on evidence in the trial court record,

found that the petitioner's motion to proceed pro se was "a tactic 'to delay his scheduled trial and obstruct the orderly course of the administration of justice.'" 682 F.2d at 784 (quoting *State v. Fritz*, 21 Wash.App. 354, 365, 585 P.2d 173, 180 (1978)). *Fritz* then petitioned for a writ of habeas corpus and moved for an evidentiary hearing on that issue. *Id.* The district court misapprehended the legal standard and evaluated whether granting the motion would have the *effect* of delay. *Id.* Concluding that it would, the district court denied the writ. We reversed and remanded with instructions for the district court to conduct an evidentiary hearing on the state appellate court's finding of *purpose* to delay. *Id.* at 786.

██ The case before us differs from *Fritz* in a most significant way. It is true that neither the district court here nor the district court in *Fritz* considered whether the self-representation motion was a tactic designed to delay trial. However, in this case the district court was correct in not considering the petitioner's purpose because, in contrast to *Fritz*, the state appellate court did not find that the motion was a tactic to delay trial. In fact, nowhere in the record is there even a suggestion that Armant made this request for the purpose of delay; Armant was in jail at the time the motion was made and would apparently have remained there throughout the period of any continuance.[1] Accordingly, there is no reason in this case, unlike *Fritz*, to remand for an evidentiary hearing on the purpose of the motion. On these facts it is clear that Armant made an adequate request which was timely as a matter of law

and that he was, therefore, entitled to exercise his right of self-representation.

## III. DENIAL OF CONTINUANCE

### A. *Introduction*

██ We now turn to the crucial issue in this case, which is whether the court's denial of Armant's continuance motion under these circumstances was an abuse of discretion. *See United States v. Daly*, 716 F.2d 1499, 1511 (9th Cir.1983), *cert. dismissed,* —— U.S. ——, 104 S.Ct. 1456, 79 L.Ed.2d 773 (1984). An abuse of discretion will be found if "after carefully evaluating all relevant factors, we conclude that the denial was arbitrary or unreasonable." *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir.1985). This is a case-by-case inquiry; we are bound by no particular mechanical test. *Id.* at 1362 (citing *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964)).

██ In *Flynt*, we set forth four factors that appellate courts have considered when faced with this issue. First, we look to the degree of diligence by the appellant prior to the date beyond which a continuance is sought. *Id.* at 1359–60. Second, we consider whether the continuance would have served a useful purpose if granted. *Id.* at 1360. Third, we weigh the inconvenience that granting the continuance would have caused the court or the government. *Id.* at 1360–61. Fourth, we look to the amount of prejudice suffered by the appellant. *Id.* at 1361. These factors must be considered together, and the weight given to any one may vary from case to case. *Id.* at 1359. At a minimum, however, in order to suc-

---

1. The *effect* of granting Armant's March 30 motion would have been to delay the trial. However, this effect must be attributed not to Armant's purpose but to the *court's* failure to grant Armant's request when it was first made on February 18, six weeks before trial. Each time Armant appeared before the court he expressed his dissatisfaction with his court-appointed attorney. Whether by motion to be appointed co-counsel or by motion for self-representation, Armant consistently sought an order from the court that would have allowed him to subpoena the witnesses his counsel refused to call. Had

Armant's request for a change in the form of representation been granted when first made, no continuance would have been necessary.

The fact that the court was unresponsive to Armant's February 18 request cannot be used to suggest that Armant's purpose in making similar requests on March 30 and 31 was to delay trial. It is clear that Armant's purpose throughout—whether his motion at any particular time was phrased as one to be appointed co-counsel or to proceed without counsel—was to be afforded an opportunity to conduct his defense as he thought best.

ceed, the appellant must show some prejudice resulting from the court's denial. *Id.*

### B. *Diligence*

 Armant first expressed dissatisfaction with his attorney on February 18, the date of his second court appearance. At that time, Armant framed his desire as one to become co-counsel; his own counsel apparently told him that his best option in order to fulfill his desire was to request self-representation. The next time he was in court, on March 30, Armant made an unequivocal request for self-representation and requested a continuance when asked if he was ready to proceed at that time. He had, earlier in the same hearing, informed the court of his desire to prepare his own defense. On March 31, when he was next in court, he sought a continuance to find a new attorney who would prepare his case as he wanted, apparently believing that the court had the previous day denied his request for self-representation.[2] We believe that under the circumstances, Armant, who is not an attorney trained in the law, exercised adequate diligence in asserting his right to self-representation. We also believe that he could not be expected to exercise any more diligence than he did to prepare his own defense when he was in jail from February 11, 1981, through the date of his trial, and was not granted the right of self-representation until the day before trial.

### C. *Usefulness of the Continuance*

Armant sought a continuance in order to represent himself effectively: he wanted time to prepare his defense. Because the continuance was denied, the trial proceeded with a public defender, with whom Armant was dissatisfied, acting in Armant's behalf. On these facts, we conclude that the continuance, if granted, would have served a useful purpose. In fact, if granted, the continuance would have allowed for the exercise of a right guaranteed by the United States Constitution. *See* part III.E., *infra.*

### D. *Inconvenience*

Armant's trial lasted only one day from start to finish. Recalendaring here, as in *Flynt,* would not have created grave scheduling difficulties. The government called only three witnesses, all of whom appear to have been residents of the area in which the trial was held. In sum, the court and the prosecution would have suffered minimal inconvenience here had a continuance been granted. *See Flynt,* 756 F.2d at 1360–61, and cases cited therein.

### E. *Prejudice to Appellant*

Finally, we must look to the prejudice suffered by appellant because of the denial of the continuance. As we have stressed, Armant's request for a continuance was in essence a request to meaningfully assert the right to self-representation. Armant's need for a continuance was both reasonable and apparent. When asked whether he was ready to go to trial on March 30, having been granted pro se status only moments before, he said, "not for myself." Before denying the continuance on March 30, Judge Hinz knew that Armant wanted to make motions his attorney had not made, wanted to call witnesses his attorney had not called, and wanted to review his preliminary transcript. In short, Armant had stated that he wanted to prepare for trial, and the court's denial of a continuance prevented him from so doing. The prejudice suffered by Armant here was no less than the effective denial of his constitutional right to self-representation. *Cf. Powell v. Alabama,* 287 U.S. 45, 59, 53 S.Ct. 55, 60, 77 L.Ed.2d 158 (1932) ("It is vain to give the accused a day in court with no opportunity to prepare for it, or to guarantee him counsel without giving the latter any opportunity to acquaint himself with the facts or law of the case.") (quoting *Commonwealth v. O'Keefe,* 298 Pa. 169, 173, 148 A. 73 (1929)).

---

**2.** In his habeas petition Armant states that at his March 30 hearing, "the judge said my motion for self-representation was not made timely and that I could not represent myself."

### CONCLUSION

 Armant made an unequivocal, timely request to represent himself, and there was no suggestion of a purpose to delay. To deny him a continuance which would have allowed him to prepare for trial effectively rendered his right to self-representation meaningless. All four of the factors discussed in *Flynt* weigh in Armant's favor. On the facts of this case, it was therefore an abuse of discretion to deny him a continuance to allow him to prepare his own defense.

 This error mandates reversal of Armant's conviction if there is a reasonable possibility that the error materially affected the verdict. *Hinman v. McCarthy*, 676 F.2d 343, 349–50 (9th Cir.), *cert. denied*, 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982). Here, the evidence against Armant was not "overwhelming," and was "woven from circumstantial evidence." *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969), *quoted in Hinman*, 676 F.2d at 350. The improper denial of Armant's continuance request denied him the opportunity to prepare his own defense to a felony charge. Under the circumstances we conclude that there is indeed a reasonable possibility that the error materially affected the verdict.

The district court's denial of the writ of habeas corpus is reversed. We remand to the district court for issuance of the appropriate writ reversing Armant's conviction and allowing the State to retry him if it so chooses. *See Hinman*, 676 F.2d at 345.

**REVERSED and REMANDED.**

BOOCHEVER, Judge, dissenting in part:

I agree with the majority in reversing the denial of Armant's petition. I write separately, however, because the majority disregards Ninth Circuit precedent as to the proper procedure on remand in this case. Moreover, I disagree with the majority's analysis of the "pro se request" and "request for continuance" as two distinct and unrelated issues. On the facts of this case, we cannot ignore that the two requests were related.

Armant's only arguably unequivocal pro se request was made on the day that trial was originally scheduled and was conditioned on securing a three weeks continuance. Ninth Circuit precedent establishes that "a motion to proceed pro se is timely made if before the jury is empaneled, unless it is shown to be a tactic to secure delay." *Fritz v. Spalding*, 682 F.2d 782, 784 (9th Cir.1982). *Fritz* explains in detail the proper analysis of the timeliness of pro se requests that result in delay:

> Delay per se is not a sufficient ground for denying a defendant's constitutional right of self-representation. Any motion to proceed pro se that is made on the morning of trial is likely to cause delay; a defendant may nonetheless have bona fide reasons for not asserting his right until that time, and he may not be deprived of that right absent an affirmative showing of *purpose* to secure delay.
>
> In determining whether a defendant's request to defend himself is a tactic to secure delay, the court may, of course, consider the effect of delay. A showing that a continuance would be required and that the resulting delay would prejudice the prosecution may be evidence of a defendant's dilatory intent. In this case, for example, where Fritz's pre-trial conduct had already caused substantial delay, a showing that his motion included a request for a continuance would be strong evidence of a purpose to delay. The inquiry, however, does not stop there. The court must also examine the events preceding the motion, to determine whether they are consistent with a good faith assertion of the *Faretta* right and whether the defendant could reasonably be expected to have made the motion at an earlier time.

*Id.* at 784–85 (Emphasis in original; citation omitted).

In *Fritz*, the district court denied Fritz's petition for habeas corpus without a hearing on two grounds: first, because it found that his pro se motion in the state court had been untimely, and second, because it found that the state court record amply

supported a finding of untimeliness. We reversed, finding that both the district court, *id.*, and the state trial and appellate courts, *id.* at 785–86, had applied an incorrect rule of law as to timeliness. Because they misconceived the legal standard, neither court had made the proper inquiry into whether Fritz's motion was a delaying tactic. Thus the record was not adequately developed on that crucial factual issue. We held that the correct procedure in such a case was to remand to the district court for an evidentiary hearing "to determine whether his motion to proceed pro se was made as a tactic to delay the start of trial." *Id.* at 786.

In this case, as in *Fritz*, Armant made his pro se motion and continuance request immediately before trial was scheduled to start. I find it impossible to tell from the transcript whether the court's denial of that request (or requests) was a grant to proceed pro se but denial of a continuance, or a denial of the pro se request because it was conditioned upon a three week delay. What is crystal clear is that the court did not want to delay the trial:

> THE COURT:
>
>> Well, the request of the defendant for a continuance of the day of trial to represent himself in pro per is denied. It's not a timely-made request. I'm not going to continue this matter for three weeks.

If the judge's ruling was a denial of the pro se request because it was conditioned upon delay, then the court (and the state appellate courts) should have inquired into whether the motion was made as a delay tactic, or merely had a delay effect. Neither court did so, and thus on this question "the material facts were not adequately developed at the State court hearing." 28 U.S.C. § 2254(d)(3) (1982). Armant is therefore entitled, under *Fritz*, to an evidentiary hearing in the district court on this question. If the district court, applying the principles set forth in *Fritz*, finds that the pro se motion was not a delay tactic, it should then issue an appropriate writ for the reasons well set forth in the majority opinion. Because there has been no record yet developed as to delay purposes, however, I conclude that we are bound by *Fritz* to remand to the district court for a hearing rather than ordering the district court to issue the writ forthwith.