**Raymond J. BARHAM,**
**Petitioner, Appellant,**

v.

**Ronald L. POWELL, etc., et al.,**
**Respondents, Appellees.**

**No. 89–1616.**

United States Court of Appeals,
First Circuit.

Heard Dec. 5, 1989.

Decided Jan. 31, 1990.

James E. Duggan, Concord, N.H., for petitioner, appellant.

Tina Schneider, Asst. Atty. Gen., with whom John P. Arnold, Atty. Gen., Concord,

---

N.H., was on brief, for respondents-appellees.

Before CAMPBELL, Chief Judge, COFFIN, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

COFFIN, Senior Circuit Judge.

Appellant Raymond Barham was convicted of first degree murder in New Hampshire state court and sentenced to life in prison without the possibility of parole. He filed a habeas corpus petition in federal court claiming that he was denied his Sixth Amendment right to represent himself because he was allowed insufficient access to a law library and, consequently, was forced to accept representation by counsel for his trial. The district court dismissed the petition largely on the ground that Barham's problem was of his own making. After careful review of the record and relevant precedent, we conclude that the district court correctly resolved this case.

## I.

On August 30, 1981, Barham shot and killed his estranged wife's then-companion as the couple was coming home from church. Barham was arrested within an hour and charged with first-degree murder. An attorney appointed the next day to represent Barham advised him to plead guilty to second-degree murder in exchange for a recommended sentence of 30 years to life. Barham, however, wanted to go to trial.

In January 1982, after Barham expressed dissatisfaction with his original lawyer, a new attorney was appointed, and the trial was postponed until October. The second lawyer also was dismissed and, at the request of his third lawyer, Barham's trial was postponed again, this time until May 1983.

On December 8, 1982, Barham filed a motion for permission to proceed pro se, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the leading case on a criminal defendant's Sixth Amendment right to self-representation. Although initially denied, the request was reconsidered by the trial court at a hearing on January 21, 1983. Barham told the judge that his latest attorney, public defender Mark Sisti, "was proceeding in a manner contrary to my wishes and desires," and that he wanted to represent himself. He said he knew that there were "mechanical difficulties" in representing himself because of his incarceration.

The judge advised Barham that the case would proceed in May as scheduled whether Barham had counsel or represented himself. The judge observed, however, that there were "three or four months" left before trial and there was "plenty of time to get things done." He therefore allowed Barham to proceed pro se with the assistance of Sisti as stand-by counsel. Sisti requested that Barham be given a copy of the New Hampshire Rules of Evidence and be allowed access to a typewriter. Barham requested one hundred dollars for supplies, and the trial judge assured him that "[n]o reasonable request will be refused."

Five days after the hearing, Barham filed a motion asking for access to a law library. The motion noted that "the use of the law library at the Carroll County Courthouse by inmates at the Carroll County Jail is not without precedent," but it made no specific request for access to the county library. On January 31, the court ordered Barham transferred to the state prison so that he could use the law library and other facilities available there.

The transfer did not work out as the court had intended. Barham was denied access to the prison library and placed in maximum security because he had a beard in violation of prison security regulations. He refused to shave because, he claimed, the beard was "vital" to his defense.[1] On February 8, a public defender wrote to the

---

1. In explaining at a hearing why the beard was important, Barham stated:

    I feel my reasons are vital to me, that my countenance and my meaning be presented intact as the witnesses I will be cross-examining know it. I cannot be, afford to be a stranger, especially to certain witnesses, and there are other reasons.

    Tr. March 23, 1983, at 7. No further elaboration of his reasons appears in the record.

attorney general's office requesting an expedited hearing on Barham's situation. On February 22, Barham filed a motion seeking an immediate hearing, complaining that he was being held "virtually incommunicado and ... unable to utilize the Law Library."

A hearing was held on March 23, nearly two months after Barham's arrival at the prison. Apparently concluding that no suitable method existed for allowing Barham to use the prison library, the court ordered him returned to the Carroll County jail with access to the library at the Carroll County Superior Court "for the purpose of research and preparation so as not to prevent trial to commence as presently scheduled."

On April 5, Barham sought a 56–day continuance of the May trial date to make up for the preparation time he lost while at the state prison. The court denied Barham's request, finding that his lack of access to the prison library had "resulted from his individual and personal election to retain a beard prohibited by state prison regulations." The New Hampshire Supreme Court dismissed Barham's writ of mandamus seeking an order postponing his trial.

Jury selection began on May 2, 1983. During the voir dire of the sixth prospective juror, Barham interrupted the proceedings and told the judge that his five weeks of preparation time had been "woefully insufficient" and that, because his request for a continuance had been denied, "under the greatest possible protest, I must relinquish my *Faretta* rights." The stand-by counsel, Sisti, said he was unprepared to proceed that day and would need a continuance. The prosecutor agreed to the postponement on the condition that Barham state for the record that he voluntarily waived his right to self-representation. After a lengthy colloquy involving the defendant, Sisti, the court and the prosecutor,

Barham eventually agreed to do so, stating, "Your Honor, I knowingly and voluntarily relinquish my *Faretta* rights." The court then rescheduled the trial for July.

The trial, at which Barham was represented by Sisti and another public defender, ended with a jury finding Barham guilty of first degree murder. He filed a timely appeal to the New Hampshire Supreme Court in which he claimed violations of his rights to a speedy trial and self representation. That court affirmed Barham's conviction in a four-to-one decision. *State v. Barham*, 126 N.H. 631, 495 A.2d 1269 (1985).[2]

## II.

Barham claims that he was denied his Sixth Amendment right to represent himself by the trial court's refusal to give him adequate time to prepare. He further asserts that it was constitutionally impermissible to force him to choose between a continuance and his Sixth Amendment right to proceed pro se.

We agree with the New Hampshire Supreme Court that the proper formulation of this issue is "whether or not the court properly denied the defendant's request for a continuance." *See State v. Barham*, 126 N.H. at 640, 495 A.2d at 1275. In attempting to characterize the trial court's actions as imposing upon him an impermissible choice between additional preparation time and waiving his *Faretta* right, Barham misperceives what happened at the May 2 hearing.

In response to Barham's apparently spontaneous declaration that he wished to forego self-representation,[3] the court forthrightly announced its intention to proceed with the trial no matter who represented Barham. The public defender, however, stated that he was not prepared and would ask for a continuance if appointed. Al-

---

2. The dissenting opinion, in its entirety, was as follows: "KING, C.J., dissenting: I dissent on the sole ground that the court's requirement that the defendant waive his right to proceed *pro se* and accept counsel was, in effect, a denial of his right to represent himself. *See Faretta v.*

*California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)."

3. After Barham made the statement, his standby attorney told the court that "[t]his was not an anticipated event."

though the court initially was inclined to deny such a request,[4] and the prosecutor initially opposed a delay, after some discussion among all parties, the prosecutor apparently concluded that forcing Sisti to go to trial unprepared raised a sufficient possibility of reversible error that it was more prudent to go along with a continuance. The prosecutor, however, saw the opportunity to foreclose another appealable issue by having Barham state for the record that he voluntarily had waived his right to represent himself. The prosecutor offered to go along with the continuance in exchange for the articulated waiver.

Thus, what Barham was required to give in exchange for the continuance was not the actual waiver of his right—which had occurred earlier and triggered the discussion in the first place—but the public assurance that his decision to request counsel had been made *voluntarily*. Ironically, the prosecutor sought to avoid just the sort of claim that Barham now makes, that the court exacted a waiver of his Sixth Amendment right to proceed pro se as a price for a continuance. In reality, when Barham interrupted the jury selection *for the purpose of waiving his Faretta rights*, he had every reason to believe that the trial would resume immediately but with Sisti conducting the defense. His lawyer in fact got a continuance at no real cost to Barham.

This is not to say that Barham felt no "compulsion" to forego self-representation. To be sure, he felt pressured to seek counsel because he was not prepared to proceed pro se. But whether that pressure is constitutionally relevant depends upon whether the judge properly refused to give him the requested 56–day continuance. If Barham needed that extra time to exercise his right to self-representation in a meaningful way, then denying him the time effectively deprived him of the right and may have been constitutional error. *See Armant v. Marquez*, 772 F.2d 552, 558 (9th Cir.1985) (denial of continuance request improperly denied defendant opportunity to prepare

his own defense). If, however, the court was within its discretion in denying the continuance, the fact that lack of preparation time "forced" Barham to seek counsel does not make his waiver involuntary for constitutional purposes. *See Maynard v. Meachum*, 545 F.2d 273, 278 (1st Cir.1976) (voluntary waiver of a constitutional right "does not mean that the decision [to waive the right] must be entirely unconstrained").

We therefore now consider whether the judge properly refused Barham's request for additional preparation time.

### III.

■ A trial court has broad discretion in deciding whether to grant a continuance, and " 'only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" ' " will constitute an abuse of discretion. *United States v. Torres*, 793 F.2d 436, 440 (1st Cir.1986) (quoting *Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964))). If the denial of a continuance effectively deprives a pro se defendant of the ability to represent himself, it may constitute both an abuse of discretion and a Sixth Amendment violation. *See Armant v. Marquez*, 772 F.2d at 558.

We are not unsympathetic to Barham's complaint that he was handed a raw deal. His motion for library access indicated that he expected to use the county library; when the court, in a well-meaning action, instead ordered his transfer to the state prison, Barham was given no time before the move to raise the possibility of a problem with the beard regulation. Once at the prison, Barham was prompt in his efforts to alert the court to his lack of library access, and the state offers no explanation for the lengthy delay before a hearing was held. Although we view as less than compelling Barham's asserted reason for re-

---

**4.** The court was concerned about the already lengthy delay in the case. The judge noted that, "I am acutely conscious of the fact that in this jurisdiction, our Supreme Court does not take kindly to murder trials being delayed two years. And as far as I am concerned, I will try to make it as clear as I can, and I hope pleasantly so[,] that this trial is going forward."

taining his beard, *see* note 1 *supra*, the reason arguably was not irrational. Moreover, the state court's ultimate conclusion that the best solution was to move Barham back to the county jail validates Barham's position that the time lost in waiting for the hearing should not be charged to him.

Despite these factors in Barham's favor, other circumstances persuade us that the state court did not abuse its discretion in denying the continuance. First, the trial had been delayed twice before at Barham's request because of changes in his representation. The court had emphasized its intention to begin on schedule in May when Barham made the decision in January to represent himself.

Second, Barham had the ability to prevent the loss of some, if not all, of the time he spent in prison. He stated at the March 23 hearing that he could not at that point shave and later regrow his beard in time for trial because "if I shaved it off this morning, I would have to regrow it immediately to have a beard [for trial] on May 2nd." Thus, since Barham in effect stated that he could regrow his beard in five weeks—the period between the hearing and the scheduled trial—it appears that he could have shaved when he first arrived at the prison, thereby obtaining access to the library while pursuing his transfer back to the county jail. By his own acknowledgement, he would have had time, after the transfer, to regrow the beard before trial.[5]

In addition, while the record indicates that meetings between Barham and his standby counsel at the state prison were difficult because of his confinement in maximum security, we see no reason why Barham could not have given Sisti specific requests for legal research materials that Barham could have used during the period he was unable to do his own research. *Cf. United States v. Pina*, 844 F.2d 1, 6 (1st Cir.1988) (standby counsel obtained much legal research material for pro se defendant).

Third, and most significantly, we are unable to conclude that the preparation time that Barham did have was constitutionally insufficient. The primary cases Barham cites to support his claim that he was effectively denied his *Faretta* rights involve instances in which defendants were given virtually no time to prepare. In *Armant v. Marquez*, 772 F.2d 552, the Ninth Circuit found reversible error where the trial judge denied a continuance and required the defendant to go to trial one day after granting his request to proceed pro se. In *Milton v. Morris*, 767 F.2d 1443 (9th Cir. 1985), the defendant was denied the extent of telephone access ordered by the court and therefore had been unable to contact any expert witness, procure an investigator or conduct any other research. The court found a constitutional violation because the defendant, "through circumstances wholly beyond his control, [had] no opportunity to prepare [a] defense." *Id.* at 1445.

In contrast, Barham had five weeks in which he was given "virtually unlimited access" to a law library, *State v. Barham*, 126 N.H. at 641, 495 A.2d at 1276, and during that time he also had the assistance of at least one competent stand-by lawyer. Although Barham may have anticipated more time when he decided to represent himself, his assumption has no bearing on how much time was necessary to allow him meaningfully to proceed pro se.[6] We cannot say that the substantial preparation period allotted Barham, with expert assistance, was so deficient that denial of a continuance violated his Sixth Amendment rights and constituted an abuse of discretion.

It is worth noting as well that Barham may not have made the best use of the time

---

5. Barham described his beard as short and well-trimmed and, indeed, it was so thin that the trial judge mistakenly thought he had shaved it when Barham appeared before him in April 1983.

6. Indeed, if Barham argues that he would not have chosen pro se status had he realized how little time would be available to him, then his only relevant constitutional claim would be that he did not voluntarily waive his right to representation by *counsel*. But Barham *did* have counsel at trial, and so he of course raises no such claim. *See* District Court Opinion at 14 n. 4.

**24**

and resources that *were* available. In requesting a continuance after Barham waived self-representation, attorney Sisti stated that Barham had been "chasing after things that we would not be chasing after." The trial court was not required to replenish time unproductively spent. In addition, we note that the state court consistently had been responsive to Barham's pro se needs, and there is every indication that if five weeks were insufficient to prepare this case, the judge, who was familiar with its details, would have allowed a delay.[7] Barham does not tell us what, in particular, he needed the extra time to do; in all likelihood, he would have felt equally unprepared to try a first-degree murder case even if given the full 56–day continuance.

In sum, the trial court's decision to limit Barham to five weeks of preparation with full access to a law library and standby counsel was within its discretion and did not deprive him of a meaningful opportunity to prepare a defense. We therefore reject Barham's claim that denial of a continuance violated his Sixth Amendment right to self-representation. We also find no error in the district court's decision to deny an evidentiary hearing on Barham's claim.

*Affirmed.*

---

**7.** The trial judge made efforts to determine whether Barham had a real need for additional time. At the hearing on Barham's motion for a continuance, the judge asked Barham and Sisti "what specific things, other than general research in the library on doctrine or law, are needed to be done that cannot be done in the time remaining between now and May 2nd?" Neither Barham nor his attorney provided any specifics. Later in the hearing, during a discussion about Barham's need to depose an out-of-state witness, the court indicated that it would view a request for a continuance based on a specific need differently from the general request made by Barham. The court stated:

"[T]he difference between a motion for a continuance based on a specific target objective of a defendant, that has some rational reference to its preparation for a defense, and a general motion to continue for lack of library facilities or whatever is a distinct one. There has been no motion filed on this basis...."

Tr. April 15, 1983, at 26.