**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MARCUS CLEMONS,

        Petitioner-Appellant,

v.

DAVID MCKUNE, Warden,
Lansing Correctional Facility;
CARLA J. STOVALL, Attorney
General of Kansas,

        Respondents-Appellees.

No. 05-3123
(D.C. No. 03-CV-3217-RDR)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BRISCOE**, and **MURPHY**, Circuit Judges.

Marcus Clemons was convicted by the State of Kansas of premeditated

first-degree murder, attempted first-degree murder, and criminal possession of a

firearm. He appealed the convictions unsuccessfully to the Kansas Supreme

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

Court and then filed a federal habeas petition pursuant to 28 U.S.C. § 2254, which the district court denied. We granted a certificate of appealability to consider whether (1) the defendant's waiver of a jury trial was knowing, voluntary, and intelligent; and (2) there was sufficient evidence of premeditation to support the guilty verdicts of first-degree murder and first-degree attempted murder. Exercising our jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we affirm.

## Background

The underlying facts of Clemons's case are discussed at length in the Kansas Supreme Court's decision affirming his convictions. *See State v. Clemons*, 45 P.3d 384 (Kan. 2002). We rehearse them here only insofar as necessary to explain our resolution on appeal. On the morning of June 29, 1999, Clemons and his friend, Tony Davis, got into an argument with Satin Huffman and Arthur McPherson as the four walked to a smoke shop in Wichita, Kansas. There was initially talk of a fist fight, but the argument quickly escalated and ended with Clemons shooting Huffman and McPherson. Although he shot Huffman at close range in the head and leg, Huffman survived. McPherson, however, died from a gunshot wound in his back.

Clemons's trial was set for August 7, 2000. On July 14, 2000, Clemons informed the judge that he was unhappy with his court-appointed attorney and wished to have another attorney appointed. If he could not have another attorney, Clemons said that he wanted to represent himself. The judge denied Clemons's

request for new counsel, and the issue of self-representation was held over until July 21, 2000. On that date, the judge explained at length the pitfalls of self-representation and advised Clemons against representing himself. The judge specifically warned Clemons about the difficulty that he would have preparing for trial while in custody. The judge advised Clemons that he could have counsel appointed at any time, but that having counsel brought back into the case at a later date would not be grounds for a continuance. After listening to the judge's warnings, Clemons maintained that he wished to represent himself, and the judge concluded that Clemons had knowingly and intelligently waived his right to counsel.

On August 7, 2000, the day his trial was set to begin, Clemons informed the court that he wished to waive his right to a jury trial. It is clear from the transcript of the proceeding that he did so because he believed that removing the case from the jury trial calendar would yield a continuance. After getting an assurance from Clemons that he wished to waive his right to a jury, the judge set the case for a bench trial three weeks later. When the day of his bench trial arrived, Clemons informed the court that he would not be representing himself, and that his court-appointed attorney would try the case. His attorney requested a continuance, which was denied. Later that day, the judge found Clemons guilty on all counts.

**Discussion**

*Standard of Review*

> [A] federal court may not grant habeas relief on a claim adjudicated on the merits in state court unless the state court decision was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Young v. Workman*, 383 F.3d 1233, 1236 (10th Cir. 2004) (quotations omitted); *see* 28 U.S.C. § 2254(d). Clemons's petition invokes both sub-sections (1) and (2) of § 2254(d). He argues that the trial judge impermissibly forced him to waive his right to a jury trial in violation of clearly established federal law and that his convictions for first-degree premeditated murder and attempted murder were based on an unreasonable determination of the facts in light of the evidence presented.

*Jury Trial Waiver*

Clemons's Sixth Amendment argument is two-fold. First, he claims that the state court impermissibly required him to give up his right to a jury trial in exchange for a continuance. Since he needed the continuance in order to effectuate his constitutional right to represent himself, he argues that the state court effectively forced him to choose between two constitutional guarantees in violation of *Simmons v. United States*, 390 U.S. 377, 394 (1968). We are not persuaded. Whether Clemons was forced to choose between his right to

self-representation and his right to a jury trial turns on whether the trial court's denial of the continuance was proper.[1] *See Barham v. Powell*, 895 F.2d 19, 21 (1st Cir. 1990). "If . . . the court was within its discretion in denying the continuance, the fact that lack of preparation time 'forced' [Clemons] to seek counsel does not make his waiver involuntary for constitutional purposes." *Id.* at 22.

We have held that "when a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion, but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process." *Case v. Mondragon*, 887 F.2d 1388, 1396 (10th Cir. 1989) (quotation omitted). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process." *Id.* at 1397 (quotation omitted). We focus on the defendant's "need for a continuance and the prejudice or lack of prejudice resulting from its denial, in the context of a fundamental fairness evaluation." *Id.*

Based on the record, we cannot conclude that the state court's denial of a continuance on the day set for trial was fundamentally unfair in this case. Two

---

[1] On this point, we note that it is unclear from the record whether Clemons actually requested a continuance before relinquishing his right to a jury trial. The transcript reflects only that Clemons informed the court that he wished to waive a jury trial and admitted that he was doing so because he needed more time to prepare. There is nothing to indicate that a formal request for a continuance was either requested or denied.

weeks earlier, the judge specifically warned Clemons about the perils of proceeding pro se – in particular how difficult it would be to prepare for trial while incarcerated. He found that Clemons had failed to present adequate grounds for the appointment of new counsel and cautioned Clemons against firing his court-appointed attorney, who had represented that he anticipated being ready on the scheduled trial date. On these facts, we conclude that the judge's denial of a continuance was not so arbitrary and fundamentally unfair as to violate due process. There is no constitutional impediment to a defendant bargaining away his right to a jury trial in exchange for something of value otherwise unavailable. *McMahon v. Hodges*, 382 F.3d 284, 291 (2d Cir. 2004). Since Clemons was not entitled to the continuance, the judge's conditioning of the continuance on the jury trial waiver was neither contrary to nor an unreasonable application of clearly established federal law.

Second, Clemons argues that the state court violated his Sixth Amendment rights by accepting a jury trial waiver that was not knowing, intelligent, and voluntary. The Supreme Court has explained that a waiver is "knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances-even though the defendant may not know the *specific detailed* consequences of invoking it." *United States v. Ruiz*, 536 U.S. 622, 629-30 (2002). Even if a criminal defendant "lack[s] a full and complete appreciation of all of the

consequences flowing from his [Sixth Amendment] waiver, it does not defeat the State's showing that the information provided to him satisfied the constitutional minimum." *Patterson v. Illinois*, 487 U.S. 285, 294 (1988) (quotation omitted).

Whether or not Clemons's waiver satisfied the constitutional minimum depends on the unique facts of his case. *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278 (1942). We conclude that it did. Before accepting the waiver, the judge specifically asked Clemons whether he had discussed his decision to waive a jury trial with his court-appointed attorney. Clemons responded that he had. Clemons also assured the judge that no one had threatened him or made him any promises in order to secure the waiver. Moreover, there is nothing in the record to indicate – and Clemons tellingly does not argue – that he failed to understand how the right to a jury would "apply *in general* in the circumstances." *Ruiz*, 536 U.S. at 629. That he may not have understood the particulars of a jury trial and all of the consequences flowing from his waiver does not defeat the state's showing in this case that the information it provided to Clemons passed constitutional muster. *See Patterson*, 487 U.S. at 294. We therefore conclude that the state's acceptance of his waiver was consistent with clearly established federal law.

*Sufficiency of the Evidence*

Clemons next challenges the constitutionality of his convictions for first-degree murder and attempted first-degree murder arguing that there was

-7-

insufficient evidence to prove the essential element of premeditation. The Supreme Court has held that a 28 U.S.C. § 2254 petition challenging the sufficiency of evidence must be granted "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

In Kansas, premeditation is defined as "the process of simply thinking about a proposed killing before engaging in the homicidal conduct." *State v. Rice*, 932 P.2d 981, 996 (Kan. 1997). In the instant case, the Kansas Supreme Court explained that "the jury has a right to infer premeditation from the established circumstances if the inference is a reasonable one." *Clemons*, 45 P.3d at 390. It went on to hold that the evidence adduced at trial, in particular that Clemons waited outside the smoke shop after the victims went inside and shot McPherson in the back, could have led a rational fact-finder to conclude that Clemons acted with premeditation. The state court's decision, of course, is entitled to deference. *Jackson*, 443 U.S. at 323. Having carefully reviewed the record, we agree with the Kansas Supreme Court that the trial evidence could have led a rational fact-finder to conclude that Clemons's murder of McPherson and attempted murder of Huffman was premeditated.

**Conclusion**

For the foregoing reasons, we conclude that Clemons has failed to make the requisite showing under 28 U.S.C. § 2254. The judgment of the district court is AFFIRMED.

Entered for the Court

Robert H. Henry
Circuit Judge