**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Willie Lee BROOKS, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 9, 2013.

Filed April 10, 2013.

Reargument Denied June 12, 2013.

Richard S. Packel, Media, for appellant.

John F.X. Reilly, Assistant District Attorney, Media, for Commonwealth, appellee.

BEFORE: LAZARUS, J., OTT, J., and STRASSBURGER, J.*

OPINION BY LAZARUS, J.

Willie Brooks appeals from his judgment of sentence, entered in the Court of Common Pleas of Delaware County, after a jury convicted him of four counts of criminal attempt to commit homicide,[1] four counts of aggravated assault,[2] one count of possession of an instrument of crime,[3] and one count of loitering and prowling at night.[4] The trial court found him guilty of persons not to possess firearms.[5] Upon review, we reverse and remand for a new trial.

In the early morning of December 6, 2006, at approximately 3:30 a.m., Officer Kevin Myers of the Radnor Township Police Department responded to a call about a prowler at 114 Browning Lane in Radnor. N.T. Trial, 8/17/2011, at 25. Officer Myers met Officer Alex Janoski at the scene. *Id.* at 28–30. They observed a man who matched the description of the suspected prowler, and when they approached and identified themselves as police, he fled. *Id.* at 30. The Officers chased the man into a driveway, at which point several shots were fired in their direction. *Id.* at 31. The officers took cover, losing the shooter in the darkness. Sergeant Robert Ruggiero and two other officers who had responded to the call spotted the suspect and approached him. *Id.* at 64–71. The suspect retreated and fired on Sergeant Ruggiero and the other officers. *Id.* at 72. The suspect again escaped.

Over seven months later, on July 13, 2007, Officer Paul Deppi of the Newtown Township Police Department observed a vehicle driven by Willie Brooks run a red light. *Id.* at 99–100. Officer Deppi initiated a traffic stop. As soon as Brooks had stopped and Officer Deppi exited his vehicle, Brooks drove away at a high speed. *Id.* at 100. Officer Deppi pursued, joined by other police vehicles, and after a high-speed chase, police eventually captured Brooks by ramming his vehicle and deploying a Taser to subdue him. *Id.* at 103. During a search of Brooks' car, made pursuant to a warrant, police found, among other items, a handgun, a cell phone, and a full-face mask with cutouts for the eyes. *Id.* at 108–14.

The Commonwealth charged Brooks with the above listed offenses, and he was tried over the course of several days. On August 16, 2011, the day jury selection was to begin, Brooks informed the court that he preferred to proceed *pro se* but only if granted a continuance to prepare his case. N.T. Trial, 8/16/11, at 5. The trial court judge denied the continuance on the grounds that over a year had elapsed during which Brooks had been represented by counsel. *Id.* During the discussion between the judge, Brooks, and Brooks' counsel, Brooks indicated that he felt compelled to

---

* Retired Senior Judge assigned to the Superior Court.

1.  18 Pa.C.S. § 901.

2.  18 Pa.C.S. § 2702.

3.  18 Pa.C.S. § 907.

4.  18 Pa.C.S. § 5506.

5.  18 Pa.C.S. § 6105.

proceed with counsel, since he did not have time to prepare his case. *Id.* at 3–14. Jury selection proceeded. The next day, defense counsel raised an objection that of the three African Americans in the jury pool, the court struck one for cause and the district attorney struck two. The trial judge overruled the objection. N.T. Trial, 8/17/11, at 5–6.

At trial, the Commonwealth presented the testimony of Monica Harper, a Verizon employee tasked with maintaining cell phone records. Harper described outgoing calls made from the cell phone Brooks was carrying when arrested in July, testifying that on December 6, 2006, a call was made from that cell phone to a Philadelphia number at 4:26 a.m. *Id.* at 128–31. Furthermore, Harper testified that the call was placed via a cell phone tower near the location of the December 6 incident. *Id.*

The cell phone subscriber was Nora Cardona. *Id.* at 132. Cardona was Brooks' girlfriend who lived with him in Philadelphia until June 2006. N.T. Trial, 8/18/2011, at 51. Cardona testified that the cell phone belonged to Brooks, and that Brooks had called her on the early morning of December 6, 2006. *Id.* at 53–54. Cardona also testified that she had served as a straw purchaser for the handgun seized from Brooks after the July incident. *Id.* at 48–49. The Commonwealth also presented the testimony of a ballistics expert, who testified that the handgun was the same weapon as that used in the December shooting incident. *Id.* at 16.

After the Commonwealth presented its case, defense counsel informed the court that Brooks would not be testifying, and the court conducted a colloquy to confirm Brooks' decision. N.T. Trial, 8/18/11, at 98–102. During this colloquy, Brooks informed the judge he was basing his decision on his understanding that should he testify, the court would allow the Commonwealth to present evidence of his prior conviction.[6] *Id.* at 101. The trial judge affirmed that he would admit the evidence if Brooks testified. *Id.* at 109, 122. After some discussion of the admissibility of the evidence of the prior conviction, Brooks reaffirmed his decision not to testify. *Id.* at 101–13, 114.

The jury convicted Brooks on August 19, 2011. On October 25, 2011, the trial judge sentenced him to consecutive 10 to 20 year sentences for each attempted homicide charge, a 2 to 4 year consecutive sentence for the person not to possess firearms charge, a 2 to 4 year concurrent sentence for possessing an instrument of a crime, and a 6 to 12 month concurrent sentence for loitering and prowling. N.T. Sentencing, 10/25/2011, at 22–24. The aggregate 42 to 84 year sentence will run consecutively to a 22–year federal sentence Brooks is currently serving.[7] *Id.* at 22.

Brooks appeals his sentence, raising three issues for review. Brooks first argues that the trial court erred in failing to grant him a continuance so that he could prepare his *pro se* defense. Brooks also raises a *Batson*[8] claim that the prosecutor improperly removed African Americans from the jury pool, resulting in an all-white jury. Finally, Brooks argues that the trial court erred in ruling that the Common-

---

**6.** Brooks was convicted of burglary in 1992, and he was incarcerated for that offense until 1999. N.T. Trial, 8/18/11, at 104.

**7.** Brooks was charged and convicted after the July incident for violating federal gun laws by illegally possessing the handgun.

**8.** *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

wealth could introduce evidence of his past criminal convictions should he testify. We find grounds to reverse the conviction on Brooks' first claim, and thus, do not address the remaining claims.

■ Denying a party's request for a continuance is a matter of judicial discretion, and constitutes reversible error only if the defendant shows "prejudice or a palpable and manifest abuse of discretion." *Commonwealth v. Hunzer,* 868 A.2d 498, 515 (Pa.Super.2005). However, we cannot simply analyze the trial court's denial of a continuance in isolation, as the decision to grant or deny the continuance impacted Brooks' Sixth Amendment right to proceed *pro se,* as established by the U.S. Supreme Court in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

■ To invoke his *Faretta* right to proceed *pro se,* a defendant must first knowingly, voluntarily, and intelligently waive his Sixth Amendment right to counsel. *Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326, 1335 (1995) (defendant must demonstrate knowing waiver under *Faretta*); *see also Commonwealth v. McDonough,* 571 Pa. 232, 812 A.2d 504, 508 (2002) (*Faretta* requires on-the-record colloquy in satisfaction of Pa.R.Crim.P. 121; colloquy may be conducted by court, prosecutor, or defense counsel). In order to invoke the *Faretta* right, the request must be timely and unequivocal. *Commonwealth v. Grazier,* 552 Pa. 9, 713 A.2d 81, 82 (1998); *see Faretta, supra* at 836, 95 S.Ct. 2525 (noting defendant's request was clear and unequivocal, and made weeks before trial). "[I]n order to invoke the right of self-representation, the request to proceed *pro se* must be made timely and not for purposes of delay[.]" *Commonwealth v. Davido,* 582 Pa. 52, 868 A.2d 431, 438 (2005).

■ Brooks made his request before jury selection had begun, and it was, therefore, timely. *Commonwealth v. El,* 602 Pa. 126, 977 A.2d 1158, 1163 (2009) ("[A] request for *pro se* status is timely when it is asserted before 'meaningful trial proceedings' have begun ... [and] proceedings become 'meaningful' as soon as the selection of jurors begins."); *see* N.T. Trial, 8/16/2011, at 3–14. Indeed, the trial court judge began delivering the *Faretta* colloquy, suggesting that he believed the motion was timely and equivocal. *See* N.T. Trial, 8/16/2011, at 3–14. Brooks' request was, however, conditional. Brooks indicated during the colloquy that while he wanted to proceed *pro se,* he felt he had no choice but to proceed with appointed counsel unless he received a continuance to prepare his defense. "I have no option Your Honor ... [i]f I will not be given time to prepare[.]" *Id.* at 6. The trial judge refused the continuance after extensive discussion, despite the objection of Brooks' appointed counsel. *Id.* at 3–15.

Attempting to delay the trial is one ground for dismissing a petition to proceed *pro se,* but by definition, a request for a continuance is to seek a delay. *See Davido, supra* at 438. By coupling a request to proceed *pro se* with a request for a continuance in order to properly prepare, it would be absurd to find that the second request *automatically* negates the first. The intention of the defendant is critical, and the trial court must determine if the motion to proceed *pro se* with a continuance is a reasonable attempt to delay the proceedings for the legitimate purpose of preparing a defense, or if it is intended to obstruct the process of justice and frustrate the operation of the court.

This Court and our Supreme Court have turned to federal case law in determining the scope of a defendant's *Faretta* rights. *See, e.g., El, supra* at 136, 977 A.2d 1158 (citing 4th and 11th Circuit cases); *Commonwealth v. Vaglica,* 449 Pa.Super. 188,

673 A.2d 371, 373 (1996) (citing 4th, 5th, 6th, 9th, and 11th Circuit cases). We also turn to relevant federal case law. In a Ninth Circuit case, *Armant v. Marquez*, 772 F.2d 552 (9th Cir.1985), the defendant also made a timely request to proceed *pro se* conditioned on receiving a continuance to adequately prepare his case.[9] The Ninth Circuit recognized that the request to proceed *pro se* and the request for a continuance were necessarily connected. The *Armant* Court, relying on Ninth Circuit case law, examined first the *pro se* petition to determine if it was timely, unequivocal and made without intent to delay, and then examined the district court's refusal to grant a continuance, under an abuse of discretion standard. Finding that the district court had abused its discretion by not allowing the continuance, it reversed the conviction. *Id.* at 558. The rationale behind the holding was that to deny the defendant "a continuance which would have allowed him to prepare for trial effectively rendered his right to self-representation meaningless." *Id.* Thus, under an abuse of discretion analysis, the denial of the continuance violated the defendant's *Faretta* right and constituted reversible error.

The First Circuit has distinguished *Armant*, holding against the defendant, but following much the same analysis. In *Barham v. Powell*, 895 F.2d 19 (1st Cir. 1990), the defendant argued that he was forced to choose between proceeding *pro se* without a continuance and proceeding with counsel, in violation of his *Faretta* rights. The Court rejected this argument, and dismissed the appeal. The First Circuit cited *Armant* for the proposition that "[i]f the denial of a continuance effectively

deprives a *pro se* defendant of the ability to represent himself, it may constitute both an abuse of discretion and a Sixth Amendment violation." *Barham, supra* at 22. However, *Barham* is distinguishable from both *Armant* and the case at bar. In *Barham*, the defendant was initially allowed a continuance to prepare to represent himself *pro se*. While there was some delay in getting the defendant access to the prison law library, the defendant "had five weeks in which he was given virtually unlimited access to a law library ... and during that time he also had the assistance of at least one competent stand-by lawyer." *Barham, supra* at 24 (internal citations and quotations omitted). Under these circumstances, the First Circuit accepted, but distinguished, *Armant* and found that, after a reasonable period, the denial of an *additional* continuance did not violate *Faretta. Id.* at 23.

Thus, *Armant* stands for the proposition that a linked continuance and *Faretta* request must be analyzed together, and absent a clear record of intent to improperly delay on the part of the defendant, the Court should grant a continuance. *Barham* can be read for the complementary proposition that a *pro se* defendant will not be given unlimited time to prepare, and that after an initial continuance, it will be within the trial court's discretion, absent other factors, to deny a subsequent continuance. *Barham* is essentially a reiteration of the rule that *pro se* defendants are held to the same procedural standards as appointed or retained counsel, as it is within the discretion of the trial court to decide whether counsel's motion for a continuance is warranted. *Hunzer, supra* at 515 (de-

---

9. In a similar case, *Milton v. Morris*, 767 F.2d 1443 (9th Cir.1985), the defendant was denied pre-trial incarceration telephone access to the extent ordered by the court and was, therefore, unable to contact expert witnesses, conduct research, or hire an investigator. The Court found a constitutional violation because the defendant, "through circumstances wholly beyond his control, [had] no opportunity to prepare [a] defense." *Id.* at 1445.

nying party's request for continuance matter of judicial discretion and constitutes reversible error if defendant shows "prejudice or a palpable and manifest abuse of discretion.").

While *Armant* and *Barham* are not binding on this Court, given the similarity between federal and Pennsylvania law on this question, we find both cases persuasive. Additionally, the fact pattern in *Armant* is similar to the fact pattern in this case. Based on these authorities and on our own Commonwealth's case law, we first examine the *pro se* motion to determine whether it was timely, equivocal, and intended to delay the proceeding. Then we proceed to the matter of the continuance, and inquire if its denial impeded Brooks' exercise of his *Faretta* rights.

■ As stated above, Brooks made a timely and unequivocal request to proceed *pro se*. The only issue remaining is to determine whether Brooks intended to delay the proceedings improperly. The trial judge concluded that the motion "was a mere ploy for a delay of the trial." Trial Court Opinion, 5/17/12, at 6. The judge noted that the pre-trial conference was continued six times, and that the trial itself continued from July 18, 2011 to August 15, 2011. *Id.* at 7.

■ While we must give deference to the trial court, we can find little support in the record for the contention that Brooks was engaged in an improper attempt to delay his trial. Of the six continuance motions, three suggested that Brooks was not even in the courtroom, as in the place of Brooks' signature is written "ATTY WILL NOTIFY DEF." Much of the documentation regarding these motions is incomplete, and thus it is difficult for this Court to discern from the original record the reasons for each continuance. There is, however, evidence on the record that the proceedings were delayed by waiting for federal authorities to forward relevant records. *See e.g.* Trial Court Order, 3/1/2011 (ordering U.S. Attorney to provide details of plea agreement proffered to Nora Cardona). On the first day of trial, Brooks' counsel told the court that four days earlier he had received "140 pages of transcripts from Federal Court which [Brooks] had not had a chance to read." N.T. Trial, 8/16/2011, at 13. This also supports a finding that there was delay in obtaining documentation regarding the related federal prosecution of Brooks. None of this suggests Brooks was engaged in an improper attempt to delay or frustrate the proceedings.

We must next determine if the denial of the continuance impacted Brooks' exercise of his *Faretta* right. The trial court judge informs us that Attorney Taggart had considerable time to prepare for the case with Brooks, suggesting that Brooks should have been ready to proceed *pro se*. Trial Court Opinion, 5/17/12, at 7. However, generous time for counsel to prepare cannot automatically be equated with sufficient time for a defendant to prepare to proceed *pro se*. If a defendant was expecting to go to trial represented by counsel, only to decide to dismiss counsel relatively late in the process, he would have had no reason to prepare. Even if the defendant could be reasonably expected to know the basic legal issues of the case due to working with counsel, there would have been no reason for the defendant to familiarize himself with the rules of evidence and criminal procedure.[10]

---

**10.** A *pro se* defendant will be bound by the normal rules of procedure. *See* Pa.R.Crim.P. 121(A)(2)(d).

We therefore hold that when faced with a request to proceed *pro se*, conditioned upon a request for a continuance in order to be prepared for trial, the trial court must examine the request in light of the impact of denying that continuance on the defendant's *Faretta* right. Where the court finds that the defendant is engaging in improper delay, the court must place sufficient evidence on the record to support this conclusion. We find that the trial court failed to do so in this case. Absent a compelling reason supported by the record, we find that the denial of the continuance violated the *Faretta* right of the defendant, and was an abuse of discretion.

The U.S. Supreme Court has "recognized a limited class of fundamental constitutional errors that defy analysis by 'harmless error' standards." *Neder v. United States,* 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (internal quotations removed) (*citing Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). A violation of *Faretta* falls into this category and is "thus subject to automatic reversal." *Neder, supra* at 8, 119 S.Ct. 1827 *citing McKaskle v. Wiggins,* 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). On this basis we must reverse the conviction.

Judgment of sentence reversed. Case remanded for a new trial. Jurisdiction relinquished.