Carroll
No. 83-363

# THE STATE OF NEW HAMPSHIRE

v.

# RAYMOND BARHAM

June 19, 1985

632

*Stephen E. Merrill*, attorney general (*Tina Schneider*, attorney, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

DOUGLAS, J. On appeal from his first degree murder conviction, RSA 630:1-a, the defendant claims that he was effectively denied his rights to self-representation and to a speedy trial. We affirm.

On Sunday, August 30, 1981, at about 11:30 a.m., Raymond Barham, then 52 years old, shot and killed Norman Walpole in Wolfeboro. At the time, Walpole was coming home from church with Louise Graham, Barham's ex-wife. Barham left the scene of the shooting immediately. Within an hour, he was arrested in nearby Tuftonboro by Police Chief William Keyes. Chief Keyes found Barham sitting in his car parked on an isolated dirt road. Barham still had his gun and stated that he intended to commit suicide. Barham was taken to the Wolfeboro police station and charged with first degree murder. He was incarcerated at the Carroll County House of Correction pending trial, which was scheduled to begin in May 1982.

Attorney Frederick Cox of Wolfeboro was asked to represent Barham. Attorney Cox thereafter entered into plea negotiations with the State and advised Barham to agree to plead guilty to second degree murder in exchange for a recommendation of 30 years to life. Barham, however, wanted to go to trial.

On November 30, 1981, Barham wrote to the court expressing dissatisfaction with Attorney Cox. Attorney Harry C. Batchelder was then appointed to represent the defendant, with the defendant's consent. In April 1982, less than one month before trial was scheduled to begin, Attorney Batchelder requested a continuance on his client's behalf. The Trial Court (*Wyman*, J.) granted the continuance and scheduled trial for October 1982.

In May 1982, the defendant indicated to Attorney Batchelder a desire to represent himself. Batchelder told him about *Faretta v. California*, 422 U.S. 806 (1975). On July 2, 1982, Barham wrote to the court citing *Faretta* and indicating a desire to represent himself.

The court responded that it would not allow any further continuances of the October 1982 trial date and that it would not release Attorney Batchelder. It further advised Barham of the right "[a]t . . . trial . . . to order your counsel to occupy a stand-by relationship

while you undertake what amounts to *pro se* representation of yourself. However, in a first degree murder case, the court will not allow you to proceed without any counsel at all."

Several more letters were exchanged between the court and the defendant during July and August in which *pro se* representation and appointment of counsel were discussed. As a result of this correspondence, the court appointed Attorney Mark Sisti as counsel for the defendant. Attorney Sisti requested a continuance of the October 1982 trial date. The court rescheduled trial for May 1983.

On December 8, 1982, the defendant filed a motion for permission to proceed *pro se*. The defendant, for the first time, sent a copy of his request to represent himself to the State. Although the defendant acknowledged that he had requested Attorney Sisti's appointment only four months before, he expressed displeasure with his counsel's preparation of the defense.

Without a hearing, the trial judge denied the motion, and Barham filed an exception. The case was scheduled for hearing on January 21, 1983, on various motions. Instead, Attorney Sisti asked the trial court to hold a hearing on the issue of self-representation. The trial judge then gave Barham "an opportunity to be heard" on this issue.

Barham told the judge that he was unaware that the trial was scheduled for May, that Attorney Sisti "was proceeding in a manner contrary to my wishes and desires" and that he did not want "this oppressive delay." Barham said that he wanted to represent himself, and that he realized that there were "mechanical difficulties due to my incarceration;" but Barham promised, if allowed to proceed *pro se*, to "immediately move forward." The trial judge noted that there were "three or four months" left before trial and there was "plenty of time to get things done." Barham agreed, and the trial judge said Barham was "entitled to help." During the hearing, the defendant reminded the court that in December 1981, he had "begged" the court to transfer him to the State prison mainly because of the "inadequacy of Carroll County for a man of my years and physical infirmities."

The court found that the defendant's decision to represent himself was knowingly and intelligently made and authorized him to proceed with the assistance of counsel on a "stand-by basis." Attorney Sisti then suggested that Barham be given a copy of the New Hampshire Rules of Evidence and that the Carroll County Sheriff's Department allow Barham access to a typewriter. Barham himself requested "a hundred dollars for supplies," and the trial judge said that "[n]o reasonable request will be refused."

Five days later, on January 26, 1983, the defendant filed a motion

for use of a law library. Although he noted that "the use of the law library at the Carroll County Courthouse by inmates in the Carroll County Jail is not without precedent," the defendant did not request access to any particular law library. In response, on January 31, 1983, the trial judge ordered the defendant transferred to the New Hampshire State Prison "so that he may use the law library and other facilities available." Unlike the Carroll County House of Correction, the State prison has its own law library on the premises, so that guards are not required to transport prisoners to and from the library and to remain there to supervise their activities.

When the defendant arrived at the State prison, almost immediately after learning of the judge's order, he was placed in maximum security and precluded from using the law library because he refused to comply with a prison security regulation prohibiting all inmates from wearing beards. The defendant has acknowledged that he knew in advance of the prohibition against beards.

On February 8, 1983, Attorney Paul Twomey, a public defender, brought Barham's situation at the prison to the attention of the State in a letter to Assistant Attorney General Gregory Swope. On February 11, the defendant filed a motion for an immediate hearing, stating that he was being held "virtually incommunicado and . . . unable to utilize the law library." This was sent to Judge Wyman, who then wrote a note back to the clerk stating that Barham was sent to the State prison to use the library.

A hearing was held in the superior court on March 23, 1983, fifty-six days after Barham had been transferred to the prison, to determine if there were "any alternative[s] in the State prison, rather than breaking the rules, that would allow Mr. Barham to have access to the library." As a result of the hearing, the Court (*Temple, J.*) ordered the defendant transferred back to the Carroll County House of Correction where he would be allowed to use, under guard supervision, the library at the Carroll County Superior Court.

On April 5, 1983, the defendant moved for a third continuance of the trial. He argued that because he had "inadvertently lost" fifty-six days of trial preparation time, the court should grant him a fifty-six-day continuance.

After a hearing on April 15, 1983, the Superior Court (*Wyman, J.*) denied the defendant's motion to reschedule trial. The court found that the defendant's lack of access to the law library facilities at the New Hampshire State Prison "resulted from his individual and personal election to retain a beard prohibited by state prison regulations." On April 22, 1983, the court denied the defendant's motion to reconsider its denial of the earlier motion to reschedule trial.

On April 26, 1983, the defendant's motion to suppress was heard.

Five witnesses testified. The defendant represented himself. The trial court suppressed certain incriminating statements and allowed others into evidence. On that same day, Barham filed a writ of mandamus in this court setting forth facts and asking for a postponement of his trial. The writ was dismissed.

Jury selection began on May 2, 1983. The defendant unsuccessfully reiterated his request for a continuance to allow him more time to prepare. In the middle of jury selection, the defendant announced that he was "reluctantly" waiving his right to proceed *pro se*. The defendant asked to be represented by Attorney Sisti, who then requested a continuance. The State insisted that the defendant "voluntarily" waive his right to proceed *pro se* as a condition of granting the continuance. "Either we go to trial or you voluntarily waive your right to self-representation. It's very simple." The court agreed that the State was "entitled to that." Barham reluctantly relented and stated: "Your Honor, I knowingly and voluntarily relinquish my *Faretta* rights." The court then rescheduled trial for July 1983.

After a trial, at which the defendant was represented by counsel, the jury found the defendant guilty of first degree murder. The court sentenced the defendant to life without parole at the New Hampshire State Prison. On appeal, the defendant states that he was effectively denied his rights to represent himself and to a speedy trial.

Under the New Hampshire Constitution, part I, article 15, and the sixth amendment to the Federal Constitution, a defendant has a right to represent himself in a criminal trial. *State v. Settle*, 123 N.H. 34, 38, 455 A.2d 1031, 1033–34 (1983); *Faretta v. California*, 422 U.S. 806 (1975). We begin, as we must, by first making an independent analysis of the protections afforded under the New Hampshire Constitution, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), using decisions of the United States Supreme Court and other jurisdictions only as aids in our analysis, *see Michigan v. Long*, 103 S. Ct. 3469, 3476 (1983). Thereafter, we need address federal constitutional issues only insofar as federal law would provide greater protection. *State v. Ball, supra* at 232, 471 A.2d at 351.

This right to self-representation does not coexist with that of a defendant to be represented by counsel. Rather, its exercise extinguishes the constitutional right to counsel. *State v. Settle, supra* at 38, 455 A.2d at 1034 (N.H. CONST. pt. I, art. 15 does not guarantee a defendant the right to act as co-counsel); *Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir. 1982); *United States v. Trapnell*, 638 F.2d 1016, 1027 (7th Cir. 1980). Furthermore, most "defendants could

better defend with counsel's guidance than by their own unskilled efforts," *Faretta, supra* at 834, so that "the choice to conduct [their] own defense may be to [their] detriment." *State v. Weitzman,* 121 N.H. 83, 86, 427 A.2d 3, 5 (1981). Because of these considerations, a defendant must plainly and unequivocally state his intention to represent himself. *United States v. Bennett,* 539 F.2d 45, 50 (10th Cir.), *cert. denied,* 429 U.S. 925 (1976).

Even then, it is incumbent upon the trial judge to ascertain whether the defendant has "knowingly and intelligently" relinquished "the traditional benefits associated with the right to counsel." *Faretta, supra* at 835. The court must "indulge in every reasonable presumption against waiver" of counsel. *Brewer v. Williams,* 430 U.S. 387, 404 (1977); *see State v. Tapply,* 124 N.H. 318, 325, 470 A.2d 900, 904 (1983). The court must also make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta, supra* at 835 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279 (1942)).

In this case, the defendant contends that he began asserting his right to self-representation in November 1981 and that it was not granted until 1983. This delay, he states, constituted a denial of his rights to represent himself and to a speedy trial. The record does not bear out this contention.

On November 30, 1981, the defendant wrote to the court expressing dissatisfaction with his court-appointed attorney, Frederic Cox. The basis for this was that Attorney Cox was a resident of the town in which the shooting occurred and for this reason the defendant did not feel that his lawyer could or would conduct a vigorous defense. He went on to state that "I ask to be appointed my own counsel . . . until such time as I can obtain new counsel from another area." The clear implication of this letter is that the defendant still wanted to be represented by counsel, but that the new attorney would have to be from another part of the State. This interpretation is borne out by the fact that the defendant shortly thereafter accepted the appointment of Attorney Batchelder.

The next time that the defendant expressed to the court a desire to conduct his own defense was in a letter dated July 2, 1982. The defendant again cited irreconcilable differences with his attorney and further stated:

"I am informed that according to Faretta v. California, I have the right to direct and conduct my own defense and this I earnestly desire to do . . . . I realize that I must have

a qualified advisor. At the present time, I am conducting a frantic search for such an attorney . . . ."

The court responded on July 12 and granted the defendant's apparent request:

"At . . . trial you have the legal right to direct your counsel's actions including the right, if you so decide, to order your counsel to occupy a stand-by relationship while you undertake what amounts to a *pro se* representation of yourself. However, in a first-degree murder case, the court will not permit you to proceed without any counsel at all, whether or not on a stand-by basis."

The defendant again wrote to the court on July 14, 1982, this time asking for the right to direct his own investigation, for the use of a typewriter, and for the services of an attorney "in a strictly advisory capacity." This was followed by another letter on August 3, 1982 in which the defendant requested that "Mark Sisti and the public defender's office be appointed as my counsel with the understanding that I personally am to conduct and direct my own defense in a *pro se* representation according to the decision in *Faretta*." The defendant went on to summarize his letters to the court of July 2 and 14 as requests that: "I be appointed *co*-counsel (emphasis in original) so that my letters and requests could no longer be arbitrarily ignored. At no time did I ask to be permitted to proceed with no counsel at all." As stated previously, defendant has no right to a hybrid defense whereby he acts as co-counsel.

Adding to the implication that the defendant did not intend to waive his right to counsel is the fact that he filed a motion in August 1982, which stated that "[o]n August 20, 1982, the Public Defender Program received written notice that they had been appointed to this case." The motion went on to cite the time it would take "present counsel" to interview the defendant, to prepare the case, to file additional motions and memoranda, and to conduct additional investigation and discovery.

We find that the above discussed correspondence and actions of the defendant are not so plain and unequivocal as to warrant a conclusion that the defendant wished to waive his right to counsel and proceed alone. *United States v. Bennett, supra* at 51 (defendant forfeited his right to self-representation by his vacillating positions).

Around December 8, 1982, the defendant for the first time filed a motion to proceed *pro se*. Without a hearing, the trial court denied the defendant's motion on December 24, 1982, stating that "[t]he

court believes it is in the best interest of the defendant that Mark Sisti, Esq. remain as counsel for the defendant."

██ The court erroneously used the defendant's best interest in denying the defendant's motion without a hearing. As stated above, a defendant has a constitutional right to represent himself, whether or not that representation will be to his detriment. Although we can understand the court's concern that a defendant charged with first degree murder be given an adequate defense, once a defendant has clearly and unequivocally expressed his desire to represent himself, the court must ascertain whether the choice has been "knowingly and intelligently" made and, if so, must then allow the defendant to proceed *pro se*.

The court corrected its error when it heard the defendant's request to proceed *pro se* on January 21, 1983. After that hearing, the court found that the defendant knowingly and intelligently waived his right to counsel and authorized him to proceed alone "with the assistance of counsel on a stand-by basis." Five days later, the defendant filed a motion for use of a law library. In response, the court authorized the defendant's transfer to the New Hampshire State Prison "so that he may use the law library and other facilities available." Within hours of receipt of the court's order, the defendant was moved to the prison.

Upon his arrival, however, the defendant was placed in maximum security and denied access to the library because he had a beard, in violation of prison security regulations.

The public defender's office sent a letter to the attorney general's office on February 8, 1983, apprising it of this situation. On February 22, 1983, the defendant filed a motion for an immediate hearing regarding his inability to use the law library. After a hearing on March 23, 1983, the court ordered the defendant transferred back to the Carroll County House of Correction, where the defendant was to be allowed full access to the courthouse library "so as not to prevent trial to commence as presently scheduled."

On May 2, 1983, the day of the scheduled trial, the defendant requested, as he had on April 15, that his trial be postponed for fifty-six days in order to make up for the loss of fifty-six days' preparation time when he was denied access to the library at the State prison. The court denied the defendant's request and jury voir dire began. In the middle of the voir dire, the defendant stood up and requested appointment of counsel because he was not prepared for trial. Defendant's stand-by counsel, Attorney Sisti, stated that he would represent the defendant but that he would need additional time to prepare. The prosecution stated that it would not agree to

the continuance unless the defendant "voluntarily" agreed to waive his right to self-representation.

On appeal, the defendant contends that the court's requirement that he waive his right to proceed *pro se* and accept counsel before a continuance was granted, was, in effect, a denial of his right to represent himself. The issue more properly framed, however, is whether or not the court properly denied the defendant's request for a continuance.

"[T]he matter of a continuance is within the sound discretion of the trial judge," *State v. Linsky*, 117 N.H. 866, 879, 379 A.2d 813, 822 (1977), and a denial of a continuance will not constitute error absent an abuse of that discretion. "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party . . . is compelled to defend without counsel." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). "There are no mechanical tests to determine when due process has been violated by the denial of a continuance, but in each case the totality of the circumstances must be considered." *State v. Linsky*, *supra* at 880, 379 A.2d at 822. Under the circumstances in the present case, we do not find that the trial judge abused his discretion in denying the defendant's motion to continue.

On January 21, 1983, the court had warned the defendant that the case would proceed as scheduled, regardless of whether the defendant represented himself or had counsel. The defendant did not object. Indeed, as late as February 22, the defendant wrote to the court that he "demands trial" on the scheduled date of May 4. For this reason, the court's error in not more promptly holding a hearing after the defendant moved to proceed *pro se* on December 8, 1982, is not a basis for finding error in denying a continuance of the May 1983, trial date.

Nor was the defendant's inability to use the library at the New Hampshire State Prison a sufficient basis for concluding that the trial court abused its discretion in denying the defendant's request for a fifty-six-day continuance. The trial court found that the defendant was unable to use the library because of his own unwillingness to conform to prison regulations by shaving his beard.

The defendant contends that he could not shave his beard because it was necessary to his defense. The reason for this was not explained, nor was the beard a part of his defense as finally presented. Nevertheless, assuming that the defendant thought at the time that his beard was a necessary element of his defense strategy, there were reasonable alternatives available which would have

allowed him to have his beard at trial and still conduct necessary legal research.

The defendant stated that his beard was "short and well-trimmed," so that he could have shaved it initially while using the library for several weeks and still have grown it back in time for the trial. The defendant also could have conducted his research through his stand-by counsel or the prison lawyer. Furthermore, the defendant had virtually unlimited access to the library at the Carroll County Superior Court after March 23, 1983.

█ Nevertheless, the defendant stated that he was not ready for trial on May 2, 1983, and asked for a fifty-six-day continuance. Under the circumstances of this case, where the defendant had been warned on several occasions that trial would begin as scheduled, where two continuances had already been granted, and where the defendant did not attempt to make reasonable efforts to take advantage of the research opportunities made available to him, we hold that the court did not abuse its discretion in denying the defendant's motion to continue.

█ █ The defendant next contends that his right to a speedy trial as guaranteed by the sixth amendment to the Federal Constitution and part I, article 14 of the New Hampshire Constitution has been violated. To determine whether a criminal defendant has been denied the right to a speedy trial, a court must consider: (1) the length of the delay; (2) the reason for the delay; (3) whether and when the defendant asserted his right to a speedy trial; and (4) whether the defendant was prejudiced as a result of the delay. *Barker v. Wingo*, 407 U.S. 514, 532 (1972); *State v. Perron*, 122 N.H. 941, 950, 454 A.2d 422, 427 (1982). Substantial emphasis is placed on the last two factors. *State v. Berger*, 125 N.H. 83, 91, 480 A.2d 27, 32 (1984).

█ The defendant claims that the length of delay was twenty months, the period of time from his arrest on August 30, 1981, to when his trial began the first time on May 2, 1983. A twenty-month delay in a first degree murder case triggers a need to decide whether or not the defendant has been denied his right to a speedy trial. "Length of delay, however, is not the determinative factor." *State v. Weitzman*, 121 N.H. 83, 86, 427 A.2d 3, 5 (1981).

█ The defendant contends that the delay resulted primarily from the court's refusal to allow him to proceed *pro se*. As previously discussed, the defendant did not clearly and unequivocally assert his right to self-representation until December 8, 1982. Moreover, this contention is not consistent with the reasons contained in the

defendant's two motions requesting continuances. The first, filed by Attorney Batchelder, moved to continue the case from its May 10, 1982, trial date because the attorney had been unable to hire an investigator and because certain witnesses had not yet been interviewed. The defendant contends, however, that this delay should not be attributed to him because he did not sign the continuance motion even though Superior Court Rule 49 requires that such a motion be signed by "counsel and his client." This is unpersuasive since a defendant temporarily waives his right to a speedy trial by *requesting* a continuance. *State v. Fraser*, 120 N.H. 117, 120, 411 A.2d 1125, 1127 (1980). Attorney Batchelder advised the defendant that by requesting a continuance, the defendant would waive his speedy trial rights. Although the defendant was not asked to sign the motion, he did agree to its filing. Attorney Batchelder also told the court that the defendant was waiving his speedy trial rights.

The second motion to continue the rescheduled trial date of October 4, 1982, was filed by Attorney Sisti. The basis for this motion was the need for additional preparation time. This motion was signed by the defendant and explicitly waived his right to a speedy trial for the period involved. The State did not move for any continuances in this case, and the defendant did not assert his right to a speedy trial prior to January 20, 1983, nearly sixteen months after his arrest.

 "It is elementary that the defendant cannot take advantage of delay he has occasioned." *Id.* The defendant cannot now claim, therefore, that his right to a speedy trial was abridged.

*Affirmed.*

KING, C.J., dissented; the others concurred.

KING, C.J., dissenting: I dissent on the sole ground that the court's requirement that the defendant waive his right to proceed *pro se* and accept counsel was, in effect, a denial of his right to represent himself. *See Faretta v. California*, 422 U.S. 806 (1975).