Merrimack
No. 90-521

AARON LEWIS, III

v.

RONALD L. POWELL, COMMISSIONER,
NEW HAMPSHIRE DEPARTMENT OF CORRECTIONS

May 1, 1992

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the petitioner.

*John P. Arnold,* attorney general (*Janice K. Rundles*, assistant attorney general, on the brief, and *Cynthia L. White*, assistant attorney general, orally), for the respondent.

HORTON, J.   The petitioner, Aaron Lewis, III, appeals an order by the Superior Court (*O'Neill*, J.) dismissing his petition for writ of habeas corpus. The petitioner, whose incarceration results from a conviction for first degree assault following a jury trial in which he represented himself with the assistance of standby counsel, *see State v. Lewis*, 133 N.H. 691, 582 A.2d 611 (1990), asserts that the trial

court failed to obtain an express waiver of his right to counsel and further failed to make him aware of the dangers and disadvantages of self-representation. These omissions, he argues, violated his rights under the Federal and State Constitutions. *See* U.S. CONST. amend. VI; N.H. CONST. pt. I, art. 15. For the reasons set forth below, we affirm.

The petitioner was represented briefly by the Dover Public Defender Office after being indicted in November 1988. By December 1988, however, the court appointed a private attorney to represent the petitioner. On December 6, 1988, the petitioner filed with the trial court a *pro se* motion requesting, in part, appointment of black counsel to defend him. The petitioner later modified this request by seeking appointment of black counsel or, in the alternative, leave of court to represent himself at trial. The first hearing on these matters occurred on January 12, 1989, before the Superior Court (*Temple*, J.). At this hearing, the court and the petitioner, who spoke directly to the bench, discussed the pending motions:

| | |
|---|---|
| "THE [PETITIONER]: | . . . If there is, if there is a point where black counsel cannot be appointed, Your Honor, with all respect to the Court, I would like to go *pro se* with co, co-counseling, if that is permissible. |
| THE COURT: | Well, if—Just off the top of my head, I'm not aware of the fact that there is available within this jurisdiction black counsel. There was an attorney practicing up in the north country, but I think he's no longer practicing. |
| THE [PETITIONER]: | Okay, then I would like to go *pro se* and have counsel as guidance for legal terminology and helping me in order to get to, to review cases like from such as a legal library so I can also prepare my case." |

The petitioner then stated that he had had some college-level legal education and had visited courtroom trials. The court continued:

| | |
|---|---|
| "THE COURT: | All right, but certainly you've never tried a jury case; this would be your first experience? |

THE [PETITIONER]: Yes, sir, and if I foul up, sir, it's on my head, nobody else's.

THE COURT: Well, it's hard to claim ineffective counsel when you represent yourself.

THE [PETITIONER]: That's right. I understand that.

. . . .

THE COURT: Well, I hope, Mr. Lewis, you have taken into consideration with this request that if you are allowed to proceed as your own counsel *pro se*, that means you are treated just as any admitted practicing attorney would be treated and are bound by the rules of evidence, you are bound by the rules of action and conduct as would an attorney before the jury.

THE [PETITIONER]: Yes, I understand that, sir."

At this point, the prosecutor asked the trial court to further question the petitioner to determine the extent of his knowledge of trial matters. She asked the court to make sure that the petitioner understood that he was "going to have to be prepared to choose a jury, to go through direct and cross-examination of witnesses, . . . to be confined to the rules of evidence in this state, . . . to prepare an opening and closing argument, and . . . to be confined to the rules of the Court." The prosecutor stated her concern that "these are serious charges and there is a prior criminal background. He is going to face a serious penalty if convicted after trial" and might appeal an adverse decision on the basis that his self-representation amounted to ineffective assistance of counsel. After further evidence was presented, the trial court found that the petitioner had made a knowing and intelligent decision to represent himself. The court also arranged for the court-appointed attorney to continue in a standby capacity.

The petitioner subsequently filed *pro se* motions to suppress and to dismiss. On March 21, 1989, these motions were heard before the Superior Court (*Dickson*, J.). At the hearing, the trial court inquired further into the petitioner's decision to represent himself:

| | |
|---|---|
| "[THE PROSECUTION]: | Well, we want to make sure that there's no issue of ineffective assistance or that the defendant is not aware of his rights to counsel or that he should not have been allowed to go forward *pro se*. |
| THE COURT: | Well, I think that the record is replete with it, but I am going to make inquiry this morning as well. |
| | . . . . |
| [THE PETITIONER]: | I'd rather go [to trial] on my own. |
| THE COURT: | Well, what I'm—all I'm trying to make clear here is that you are—you're entitled to go on your own, if that's what you want, but you have to convince me that you're doing it in a knowing and intelligent way, that you're just not being bullheaded about it, do you understand what I'm saying? |
| [THE PETITIONER]: | Your Honor, I'm not being bullheaded about it . . . . |
| THE COURT: | Well, don't you think, and I know it may be uncomfortable between [you and court-appointed counsel], but don't you think that maybe he can help you procedurally? |
| [THE PETITIONER]: | Well, he can help me procedurally if he does it procedurally. |
| THE COURT: | I'm sorry? |

[THE PETITIONER]: He can help me procedurally, but I don't need him asking me, well, what's the facts on this, what's the facts on that. He's not—in an indirect way, he is advisor, he can advise me on certain things, not to ask me about this and that, to get an opinion on something, to form his own opinion.

THE COURT: All right, all right, okay. So you agree with me, then, that if he acts as a standby counsel and advises you and whether you accept the advice or not, of course, is up to you, but he may advise you how to ask a question or advise you that a question you're maybe thinking about asking is, you probably shouldn't ask, that kind of thing. You have no problem with that?

[THE PETITIONER]: No, sir."

Satisfied, the court allowed the petitioner to go forward with the trial in a *pro se* capacity. At trial, the petitioner was convicted by a jury. He unsuccessfully appealed. *See Lewis*, 133 N.H. at 693, 582 A.2d at 612. He then filed a petition for writ of habeas corpus in the superior court, maintaining that the trial court had unconstitutionally failed to obtain an express waiver of counsel and had failed to warn him of the dangers and disadvantages of self-representation. The petition was denied.

On appeal, the petitioner repeats his arguments below. The State counters that the record, taken as a whole, supports the trial court's findings. It also asserts that requiring an express waiver of counsel or more specific cautionary information than that imparted by the trial court would exalt form over substance.

As a preliminary matter, we will analyze these arguments under part I, article 15 of the New Hampshire Constitution. *See State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983). That article pro-

vides, in part, that "[e]very person held to answer in any crime or offense punishable by deprivation of liberty shall have the right to counsel at the expense of the state if need is shown; this right he is at liberty to waive, but only after the matter has been thoroughly explained by the court." N.H. CONST. pt. I, art. 15. Even though counsel will act in a standby capacity, the language of part I, article 15 requires a waiver of the right to counsel. N.H. CONST. pt. I, art. 15; *see also Faretta v. California*, 422 U.S. 806, 835 (1975) (interpreting sixth amendment of the Federal Constitution, Court noted: "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel").

■■ In order to represent himself, the accused must "'knowingly and intelligently' relinquish 'the traditional benefits associated with the right to counsel.'" *State v. Barham*, 126 N.H. 631, 637, 495 A.2d 1269, 1273 (1985), *habeas corpus dismissed*, 895 F.2d 19 (1st Cir.), *cert. denied*, 110 S. Ct. 2572 (1990) (quoting *Faretta, supra* at 834). The trial court found that the petitioner "knowingly and intelligently" waived his right to counsel, and the petitioner has not challenged that finding. Instead, he urges us to adopt a requirement of express waiver of the right to counsel whenever a criminal defendant chooses to proceed *pro se*. We decline the invitation to establish any such prophylactic rule.

■■ Under *Barham*, "a defendant must plainly and unequivocally state his intention to represent himself," 126 N.H. at 637, 495 A.2d at 1273, and such an election is tantamount to waiver. "[The] right to self-representation does not coexist with that of a defendant to be represented by counsel. Rather, its exercise extinguishes the constitutional right to counsel." *Id.* at 636, 495 A.2d at 1273.

■ In this case, the petitioner's intention to proceed *pro se* was "plain and unequivocal." Prior to trial, the petitioner sought appointment of black counsel or, in the alternative, leave of court to represent himself at trial. At the hearing on this motion, the petitioner informed the court that he "would like to go *pro se* with co, co-counseling, if that is permissible," and "would like to go *pro se* and have counsel as guidance . . . ." At a second pre-trial hearing, the petitioner told the court, "I'd rather go [to trial] on my own." Under the circumstances of this case, the petitioner's repeated requests to proceed *pro se* adequately met the *Barham* standard that he state his intention to represent himself "plainly and unequivocally."

■ The petitioner's second argument is also unpersuasive. He contends that the trial court failed to adequately advise him of the dangers and disadvantages of self-representation and, therefore, that his waiver of the right to counsel was invalid. Under *Barham,* "[t]he court must . . . make the defendant 'aware of the dangers and disadvantages of self-representation.'" *Id.* at 637, 495 A.2d at 1273 (quoting *Faretta, supra* at 835). Although the petitioner concedes that "*Barham* . . . leaves open just how far a court must go during a colloquy with a *pro se* defendant in explaining the problems of self-representation," he maintains that the explanation in this case was inadequate. We disagree.

■ Our examination of the record reveals that the petitioner was adequately advised of the disadvantages inherent in self-representation. Both judges who discussed self-representation with the petitioner, as well as the prosecuting attorney, made statements suggesting that proceeding *pro se* would require that the petitioner be "treated just as any admitted practicing attorney." Consequently, he would have to "be prepared to choose a jury, to go through direct and cross-examination of witnesses, . . . to be confined to the rules of evidence in this state, . . . to prepare an opening and a closing argument, and . . . to be confined to the rules of the Court." The trial court also warned the petitioner that his emotional involvement could be a "detriment" in handling his own case. The prosecutor noted that the charges that the petitioner faced were serious ones and that, therefore, he would face substantial incarceration if convicted. Moreover, both judges made it clear to the petitioner that he would need the assistance of standby counsel to advise him about the legal and procedural aspects of his case. Consequently, we find no error in the trial court's warnings to the petitioner concerning the dangers and disadvantages of self-representation.

Because the sixth amendment to the Federal Constitution does not provide greater protection in this area than part I, article 15 of the State Constitution, it is not necessary for us to undertake a federal constitutional analysis. *See Ball,* 124 N.H. at 232, 471 A.2d at 351.

*Affirmed.*

All concurred.