Merrimack
No. 93-085

THE STATE OF NEW HAMPSHIRE

v.

ERIC DAVIS a/k/a ERICO DAVIAS

December 14, 1994

186

*Jeffrey R. Howard,* attorney general (*John C. Kissinger,* attorney, on the brief and orally), for the State.

*Gary Apfel,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Eric Davis a/k/a Erico DaVias, was convicted after a jury trial in the Superior Court (*McHugh,* J.) of two counts of theft by deception, RSA 637:4 (Supp. 1991) (amended 1992). On appeal the defendant argues that the superior court erred in: (1) conducting proceedings in the defendant's absence; (2) allowing the defendant to proceed *pro se;* (3) admitting a

photocopy of a bank check at trial; and (4) failing to instruct the jury as to venue. We affirm.

On August 12, 1988, the defendant opened a checking account at First Capitol Bank in Concord under the name Eric Davis and was issued an automatic teller machine (ATM) card. The following month, the defendant was employed by Concord Communications Associates, Inc. (Concord Communications), identifying himself as Erico DaVias.

On September 26, 1988, a check in the amount of $843.91, drawn on Concord Communications' checking account, was deposited into the defendant's checking account through an ATM in Manchester. Two days later, a check in the amount of $41,050, drawn on Concord Communications' money-market account, was similarly deposited into the defendant's account. Concord Communications did not issue these checks. Funds from these deposits were later transferred to an account at the Indiana National Bank in the name of Eric Davis. The defendant was thereafter indicted on two counts of theft by deception, and counsel was appointed to represent him.

On November 20, 1991, the defendant moved for the appointment of new counsel, and new counsel was appointed. Thereafter, through a series of motions and correspondence with the superior court, the defendant sought the removal of three subsequent attorneys, each time moving to represent himself.

On April 22, 1992, during a hearing on one of the defendant's motions to proceed *pro se,* the Court (*Coffey,* J.) discussed the consequences of self-representation with the defendant:

| | |
|---|---|
| THE COURT: | You would like to proceed as pro se using [counsel] for technical assistance? |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | All right. If that's, in fact, what you want to do, sir, then I have certain things that I have to determine and that is I have to ascertain whether you are knowingly and intelligently giving up your traditional benefits of the right to counsel. |
| | Now, I'm going to appoint [counsel] to represent you in a technical or stand by capacity, but before I can do that, I have to satisfy myself that you understand what you're doing, number one, and that you fully understand that you have the right to have [counsel] represent you fully |

|                   |                                                                                                                                                                                             |
|-------------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                   | or [another] attorney represent you fully. Do you understand that you have the right to have an attorney represent you fully in this matter?                                                  |
| THE DEFENDANT:    | Yes, Your Honor.                                                                                                                                                                             |
| THE COURT:        | And do you understand that representing yourself, even with an attorney available for technical assistance, has certain disadvantages?                                                        |
| THE DEFENDANT:    | Yes, Your Honor.                                                                                                                                                                             |
| THE COURT:        | And that those disadvantages are, in the first instance, you may not be as familiar with courtroom procedure, that you may not have the technical expertise to be able to form theories of your own defense and that if you had an attorney representing you fully, an attorney would have more familiarity with the manner in which trials are conducted and the manner in which trial strategy is determined than you might have yourself. Do you understand that? |
| THE DEFENDANT:    | Yes, Your Honor.                                                                                                                                                                             |
| THE COURT:        | And knowing all of that, do you still wish to proceed pro se with only the technical assistance of [counsel]?                                                                                |
| THE DEFENDANT:    | Yes, Your Honor.                                                                                                                                                                             |
| . . . .           |                                                                                                                                                                                             |
| THE COURT:        | You think that you would be able to proceed on your own behalf, question witnesses, make an opening argument to a jury, make a closing argument to a jury, question all the witnesses and cross-examine witnesses when obviously you are so intimately involved in the charges? |
| THE DEFENDANT:    | Yes, to the best of my knowledge.                                                                                                                                                            |
| THE COURT:        | You think you would be able to do that?                                                                                                                                                      |
| THE DEFENDANT:    | Yes.                                                                                                                                                                                         |

After this exchange, however, the defendant's stand-by counsel indicated that he was not comfortable with such an arrangement, and the defendant and his stand-by counsel conferred off the

record. The court did not grant the defendant's motion to proceed *pro se* at that time.

On September 9, 1992, the superior court held a hearing to resolve all pending motions before trial, including another motion by the defendant to proceed *pro se*. The defendant, although in custody, refused to appear at this hearing. The Superior Court (*Hampsey,* J.) issued an order requiring that the defendant appear at a hearing later in the day or have the motions decided in his absence. This order was read to the defendant by the sheriff's department. The defendant still refused to appear, and the court held the hearing without him, granting his motion to proceed *pro se,* while retaining appointed counsel as stand-by counsel.

On October 16, 1992, the defendant appeared at a pretrial conference, at which he indicated that he would not voluntarily participate in the trial. The Superior Court (*McHugh,* J.) asked the defendant whether he wanted the assistance of counsel, and the defendant stated that he did not. The court also engaged the defendant in a discussion to ensure he understood the consequences of his decision not to participate in the trial. The defendant stated that he understood the consequences, including the potential punishment that could be imposed, if he were to be found guilty.

The defendant's trial began on January 11, 1993. The court again discussed with the defendant his decision not to participate in the trial. The defendant indicated that he had not changed his mind and that he understood the consequences of his decision. These consequences, specifically discussed by the defendant and the trial court, included his right to participate in jury selection and his right to confer with his appointed stand-by counsel on the evidence presented at trial. The trial court also specifically asked the defendant whether he understood that his stand-by counsel would be at a significant disadvantage due to the defendant's absence, to which the defendant responded that he understood. On several other occasions during the trial, the trial court asked the defendant whether he wished to participate, and on each occasion the defendant declined.

The defendant alleges violations of the New Hampshire and United States Constitutions. We address the defendant's claims first under the State Constitution, *State v. Ball,* 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), considering federal law only as an analytical aid, *State v. Maya,* 126 N.H. 590, 594, 493 A.2d 1139, 1143 (1985). Where, as in the instant case, the federal law is not more favorable to the defendant, we make no separate federal analysis. *See State v. Lister,* 119 N.H. 713, 716, 406 A.2d 967, 969

(1979) (*Lister I*); *State v. Barham,* 126 N.H. 631, 636, 495 A.2d 1269, 1273 (1985), *habeas corpus dismissed sub nom. Barham v. Powell,* 895 F.2d 19 (1st Cir.), *cert. denied,* 495 U.S. 961 (1990).

The defendant argues that, despite his refusal to attend certain hearings and trial, the court erred in proceeding *in absentia.* In support of this proposition, the defendant relies on *Lister I,* 119 N.H. 713, 406 A.2d 967. This reliance is misplaced. *Lister I* stands for the proposition that proceedings *in absentia* can be acceptable under part I, article 15 of the New Hampshire Constitution. Acknowledging similar federal court decisions in this area, this court held that, where a trial has commenced, the trial of an escaped prisoner still at large does not violate the State Constitution. *Id.* at 716, 406 A.2d at 969.

■ "There is no prohibition against [the right to be present at criminal proceedings] being waived as the result of a defendant's voluntary absence from certain proceedings." *Id.* We hold that this principle is equally applicable to an in-custody criminal defendant who refuses to attend court proceedings. Trials are not to be held according to the fancy of the defendant. *Id.* The defendant's "flat refusal to attend trial was, without question, an explicit and intentional relinquishment of a known right and an undeniable waiver of his constitutional right to be present in court at the trial and to confront adverse witnesses." *Wilson v. Harris,* 595 F.2d 101, 103 (2d Cir. 1979).

Accordingly, having been informed of the consequences by the superior court, the defendant effectively waived his right to be present at the September 9, 1992, motions hearing by refusing to attend. Furthermore, having been given a full explanation of the consequences of his absence by the superior court on October 16, 1992, the defendant effectively waived his right to be present at his trial by refusing to attend.

■■ The defendant next argues that the superior court erred in allowing him to proceed *pro se.* "[A] defendant has a constitutional right to represent himself, whether or not that representation will be to his detriment." *Barham,* 126 N.H. at 639, 495 A.2d at 1275. To allow a defendant to represent himself, the court must ascertain whether the choice has been made knowingly and intelligently. *Id.* The court must, in this analysis, " 'indulge in every reasonable presumption against waiver' of counsel." *Id.* at 637, 495 A.2d at 1273 (quoting *Brewer v. Williams,* 430 U.S. 387, 404 (1977)).

Because the defendant refused to involve himself in many court proceedings, the superior court was presented with an unusual

situation. The court could not engage the defendant in a colloquy on the subject of waiver of his right to counsel at the September 9, 1992, hearing, when his motion to proceed *pro se* was granted. Viewing the totality of the circumstances, however, the court reasonably concluded that the defendant intended to waive his right to counsel and that the waiver was knowingly and intelligently made.

On April 22, 1992, the court engaged the defendant in a thorough discussion of the consequences of proceeding *pro se.* The record indicates that the defendant understood these consequences. Although the defendant chose not to represent himself at that time, he expressed reservations about accepting full representation by counsel. Therefore, it is not surprising that the defendant later decided to represent himself. When the defendant's subsequent motion to proceed *pro se* came before the superior court on September 9, 1992, the defendant refused to attend the hearing. The court indicated that it was aware of the possible problems of granting the motion *in absentia* but did so, noting that the court had carefully considered the issue.

In addition, the defendant's motion to proceed *pro se,* which reflected an understanding of the significance of the motion as well as a disagreement over tactics with defense counsel, is evidence that he waived his right to counsel with "eyes open." *Barham,* 126 N.H. at 637, 495 A.2d at 1273 (quotation omitted). We note that this was the defendant's fourth defense counsel. *Cf. Nunn v. Wilson,* 371 F.2d 113 (9th Cir. 1967) (repeated requests for continuances to obtain new attorney held to waive right to counsel). Furthermore, the superior court addressed the issue of waiver of counsel at a motion hearing on October 16, 1992. Although this was after the motion to proceed *pro se* had been granted, such a discussion with a defendant can serve to establish that a waiver was made knowingly and intelligently. *Cf. Barham,* 126 N.H. at 639, 495 A.2d at 1275.

■ We hold that the court had sufficient evidence before it to conclude that the defendant's waiver of the right to counsel was made knowingly and intelligently. Although it is this court's strong preference that trial courts engage in a personal discussion with any defendant seeking to waive such a fundamental right as the right to be represented by counsel, the unusual circumstances of this case justify the lack of such a discussion at the time the motion was granted. We note that these unusual circumstances were brought about by the defendant himself.

The third assignment of error challenges the admission at trial of a copy of a check from the Indiana National Bank. While the

defendant objected to this evidence as inadmissible hearsay not within the business records exception to the hearsay rule, N.H. R. Ev. 803(6), the record before us does not clearly indicate which exception to the hearsay rule was the basis for the court's ruling. Assuming for purposes of this appeal that the introduction of the check was error, however, the error was harmless. *See State v. Ruelke,* 116 N.H. 692, 694, 366 A.2d 497, 498 (1976).

■ "The erroneous admission of hearsay evidence is harmless when it can be said beyond a reasonable doubt that the verdict was not affected." *State v. Sampson,* 132 N.H. 343, 348, 565 A.2d 1040, 1043 (1989). "In evaluating whether the outcome was affected by the introduction of the [hearsay evidence], we consider the other evidence presented at trial." *Id.* Evidence at trial included the testimony of an owner of Concord Communications who stated that the defendant was one of only four people with access to the company's checkbooks, two of whom were owners of Concord Communications. A handwriting expert from the Federal Bureau of Investigation testified that in his opinion the endorsements on the stolen checks were made by the defendant. The checks were deposited into the defendant's account, using his ATM card, during his brief tenure at Concord Communications. The State introduced ample evidence to show that the bulk of funds from these deposits were transferred to "Eric Davis" at various banks in the Midwest.

■ The evidence of the defendant's guilt is extensive. The crime of theft by deception requires proof that the accused "obtain[ed] or exercise[d] control over property of another by deception and with a purpose to deprive him thereof." RSA 637:4, I. The copy of the check was unimportant in light of the substantial weight of the other evidence that the crime was committed by the defendant. Therefore, it can be said beyond a reasonable doubt that the introduction of the copy of the check did not affect the verdict. *State v. Monsalve,* 133 N.H. 268, 271, 574 A.2d 1384, 1386 (1990).

■ Turning finally to the fourth issue raised by the defendant, that the jury was not instructed on the issue of venue, we do not reach the merits. Although the defendant raised the venue issue in a motion to quash his indictments and a motion to dismiss, he never raised venue in the context of jury instructions. The defendant failed to propose a venue instruction or object to the instructions as given. "In this State, a defendant waives his right to a specific jury instruction unless the request is timely made." *State v. Lister,* 122 N.H. 603, 607, 448 A.2d 395, 398 (1982) (*Lister II*). Furthermore, a specific objection on the record is required to

preserve an issue for review. *State v. Menard,* 133 N.H. 708, 711, 584 A.2d 752, 754 (1990). This requirement is "particularly appropriate where an alleged error involves a jury instruction." *State v. Eldredge,* 135 N.H. 562, 564, 607 A.2d 617, 618 (1992) (quotation omitted).

*Affirmed.*

All concurred.