Hillsborough-southern judicial district
No. 2002-079

THE STATE OF NEW HAMPSHIRE

v.

TERRY THOMAS

Argued: June 18, 2003
Opinion Issued: December 9, 2003

*Peter W. Heed,* attorney general (*Susan P. McGinnis,* attorney, on the brief and orally), for the State.

*David M. Rothstein,* deputy chief appellate defender, of Concord, by brief and orally for the defendant.

NADEAU, J. The defendant, Terry Thomas, appeals his conviction on three counts of receiving stolen property, *see* RSA 637:7 (1996) (amended 2001), following a jury trial in the superior court. We affirm.

On appeal, the defendant contends that the trial court erred by failing to conduct a "penetrating and comprehensive" *Faretta* colloquy before allowing him to proceed *pro se* at trial, *see Faretta v. California*, 422 U.S. 806, 834-35 (1975); *cf. State v. Barham*, 126 N.H. 631, 637-38 (1985), and by denying his request for a transcript of his earlier suppression hearing to use for impeachment purposes at trial. The defendant also contends that he has a State and federal constitutional right to proceed *pro se* in this appeal. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amend. VI. He urges us to reject the United States Supreme Court's reasoning in *Martinez v. California*, 528 U.S. 152 (2000), in which it held that a defendant has no federal constitutional right to proceed *pro se* on appeal.

*I. The Defendant's Waiver of the Right to Counsel at Trial*

Citing Part I, Article 15 of the New Hampshire Constitution and the Sixth Amendment of the Federal Constitution, the defendant first argues that the trial court failed to conduct an adequate colloquy before allowing him to represent himself. He contends that although the record reflects that he wanted to represent himself, it does not reflect that he was capable of doing so or that he understood the risks. We first address his claim under the State Constitution, *see State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal opinions for guidance only, *see id.* at 232-33.

The New Hampshire Constitution grants a criminal defendant either the right to counsel or the right to represent himself in defense of a criminal prosecution. *See* N.H. CONST. pt. I, art. 15. The exercise of one right, however, nullifies the other. *See State v. Panzera*, 139 N.H. 235, 237-38 (1994). We therefore respect a defendant's waiver of the right to counsel only if he evinces an understanding of what the right to counsel encompasses, and asserts an unequivocal desire to relinquish it. *See id.* at 238. "[O]nce a defendant has clearly and unequivocally expressed his desire to represent himself, the court must ascertain whether the choice has been 'knowingly and intelligently' made and, if so, must then allow the defendant to proceed *pro se.*" *State v. Barham*, 126 N.H. at 639. The United States Supreme Court has found that if a defendant is "literate, competent, and understanding, and . . . voluntarily exercising his informed free will," then a waiver may be found to be knowing and intelligent. *Faretta v. California*, 422 U.S. at 835. The defendant contends that because the trial court failed to conduct a sufficient colloquy, his waiver

was not knowing, voluntary and intelligent. Based on our review of the record, we disagree.

In January 2000, the defendant sought a change in his assigned counsel, requesting that his new counsel be appointed to participate as co-counsel with him in his defense. At that time, he advised the court that he had some college education. The Trial Court (*Hollman*, J.) warned him that it would be "dangerous" for him to undertake the examination of a witness without any trial experience or knowledge of the rules of evidence, and suggested that he could further discuss his proposed role with his new assigned counsel. In subsequent hearings, the defendant received explanations about the effect of stipulations, potential sentences and consolidation of charges.

In 2001, after at least four different lawyers had been appointed to represent the defendant, he again sought new counsel. The Trial Court (*Groff*, J.) denied his motion and the defendant opted to proceed *pro se*. The court appointed his then current counsel as stand-by counsel; the court's order provided a detailed explanation of the role of stand-by counsel. At a second hearing that day, the Trial Court (*Hampsey*, J.) again emphasized the responsibility that the defendant was assuming and asked him whether he wished to reconsider his decision to proceed *pro se*; the defendant reaffirmed his decision. At a subsequent hearing in May 2001, the defendant confirmed that he had decided to proceed *pro se* and represented that he would be ready to go to trial on the following Monday if he received some assistance with the service of subpoenas; the Trial Court (*Galway*, J.) made arrangements for service. The defendant also renewed his request for the appointment of replacement stand-by counsel; the trial court denied his request, finding that it was a delaying tactic. *See* SUPER. CT. R. 15 (withdrawal of attorneys not permitted after case assigned for trial except upon motion granted by court for good cause shown).

More than once, the trial court judges made the defendant "aware of the dangers and disadvantages of self-representation." *State v. Barham*, 126 N.H. at 637 (quotation omitted). The judges repeatedly explained the responsibilities the defendant would assume if he elected to proceed *pro se*; he was also afforded many opportunities to reconsider his decision. Thus, while the defendant's decision to proceed *pro se* may have been to his detriment, *see State v. Weitzman*, 121 N.H. 83, 86 (1981), it was knowing, intelligent and voluntary. While we strongly prefer that trial court judges conduct an inquiry with a defendant who wishes to waive his right to counsel, *see State v. Davis*, 139 N.H. 185, 191 (1994) (setting forth

model colloquy for waiver of right to counsel), the trial court in this case had sufficient evidence to conclude that the defendant's waiver was valid.

Because the Federal Constitution offers the defendant no greater protection than our State Constitution under these circumstances, *see Faretta v. California*, 422 U.S. at 834-35; *State v. Barham*, 126 N.H. at 638-39, we reach the same result under the Federal Constitution.

## II. The Defendant's Right to a Transcript

The defendant next contends that the trial court's denial of his request for a transcript of his suppression hearing violated his State and federal constitutional rights to due process and a fair trial. We first address his claim under the State Constitution, *see State v. Ball*, 124 N.H. at 231, and cite federal opinions for guidance only, *see id.* at 232-33.

██ We have previously recognized that the right to a transcript is not absolute. *See State v. Cofske*, 129 N.H. 133, 135 (1987). In *Britt v. North Carolina*, 404 U.S. 226 (1971), the United States Supreme Court "identified two factors that are relevant to the determination of need: (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript." *Britt*, 404 U.S. at 227. We have observed that "[d]efense counsel need not be clairvoyant in delineating specific need for a transcript on the part of an indigent defendant." *State v. Brown*, 143 N.H. 197, 199 (1998) (quotations omitted). Consistent with the second factor enunciated in *Britt*, however, we have held that in any case in which an audiotape exists of the proceeding for which a transcript is sought, "the burden [is] on the defendant requesting the transcript to review the audiotape to determine the value to the defendant and to limit the scope of his request." *Id.* at 200. We find no evidence of the defendant's compliance with this requirement in this case.

The defendant's request for an expedited transcript of his suppression hearing was denied on January 5, 2001. On January 24, 2001, the trial court granted the defendant's request to listen to tapes of court proceedings and ordered that "satisfactory arrangement shall be made for the defendant and defense counsel to listen to the tapes." In March 2001, after the defendant advised the court that he had not had enough time to listen to the tapes, the Trial Court (*Hampsey*, J.) granted him additional time to listen to the tapes. The defendant then requested that his standby counsel not be present; the court granted that request. The record contains no indication that the defendant subsequently reported to the court about the adequacy of the tapes as an alternative to a transcript.

■ While the defendant contends that *Brown* "may conflict with *Britt*," we find no conflict in this case. In some cases, access to the tape of an earlier hearing may satisfy the *Britt* standard. Moreover, a review of the tape may allow the defendant to narrow his request. *See, e.g., State v. Cofske*, 129 N.H. at 134 (defendant's request for transcript limited to victim's testimony at competency hearing). Because the defendant did not report to the trial court after completing his review of the tapes, the trial court was unable to determine whether an alternative was available that would fulfill the same functions as a complete transcript.

Based on the record before us, we conclude that the trial court's denial of the defendant's request for a transcript of the suppression hearing did not violate the State Constitution. Because the Federal Constitution offers the defendant no greater protection than our State Constitution under these circumstances, *see Britt* 404 U.S. at 227-30, we reach the same result under the Federal Constitution.

*III. The Defendant's Right to Proceed Pro Se on Appeal*

In his final argument, the defendant contends that he has a State constitutional due process right to represent himself on appeal. He urges us to reject the reasoning of the United States Supreme Court in *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152 (2000), which held that a criminal defendant has no federal due process right to represent himself in a direct criminal appeal. Alternatively, the defendant requests that we rule that criminal defendants have a right to file *pro se* appellate briefs on issues appointed appellate counsel declines to address. We construe the issue before us to be whether the Due Process Clause of our State Constitution grants a criminal defendant entitled to appointed appellate counsel the right to proceed *pro se* on appeal.

We consider three factors in our due process analysis:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*State v. Landry*, 146 N.H. 635, 637 (2001).

The defendant argues that the *Martinez* court gave insufficient consideration to the deprivation of individual autonomy; if the court

requires an appellant to pursue an appeal with a lawyer he does not want, his options are to proceed with the lawyer or drop his appeal.

■ Despite this potential limited incursion on a defendant's autonomy, the private interest at stake in this case is broader: the deprivation of the defendant's liberty. *See id.* The risk of an erroneous deprivation of that interest is increased where an appellant appears *pro se.* "The requirement of representation by trained counsel implies no disrespect for the individual inasmuch as it tends to benefit the appellant as well as the court." *Martinez,* 528 U.S. at 163. The government's interest is in insuring the integrity and efficiency of the appellate process. Although we have found greater protection for individual rights under our New Hampshire Constitution than that found under the Federal Constitution, in this case we conclude that the defendant's interest in autonomy does not outweigh the interests of the State. We therefore hold that our State Constitution provides no due process right to the defendant to proceed *pro se* on appeal.

Our holding today is limited to whether due process grants criminal defendants entitled to appointed appellate counsel the right to proceed *pro se* on appeal; it does not limit our discretion to allow a defendant to do so. In this case, the defendant has filed with the court a memorandum in support of his motion to proceed *pro se* on appeal. He cites several issues which he alleges his appellate counsel failed to pursue. After review of his pleadings, we deny his request.

*Affirmed.*

DUGGAN, J., concurred; COFFEY, HICKS and VAUGHAN, JJ., superior court justices, specially assigned under RSA 490:3, concurred.